## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ISAAC REID, CLEMENT GREEN, ROBERT B. WALKER, LIONEL SINGH, KEITH CLARKE, IBRAHIMA BAH, MAMADOU WAGUE, MARIE W. DASNEY, ORVILLE HARRIS, GREGORY MORGAN, TREVOR FRANCIS, EVERTON WELSH, FRANK TAYLOR, SEYMOUR LEWIS, and JOHANN RAMIREZ on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUPERSHUTTLE INTERNATIONAL, INC.; SUPERSHUTTLE FRANCHISE CORPORATION, VEOLIA TRANSPORTATION SERVICES, INC., d.b.a. SUPERSHUTTLE, SHUTTLE ASSOCIATES, LLC.<br><br>Defendants. | Civ. No. 1:08-cv-04854-JG-VVP |

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs Isaac Reid, Clement Green, Robert B. Walker, Lionel Singh, Keith Clarke, Ibrahima Bah, Mamadou Wague, Marie W. Dasney, Orville Harris, Gregory Morgan, Trevor Francis, Everton Welsh, Frank Taylor, Seymour Lewis and Johann Ramirez (collectively "Plaintiffs") individually, as class representatives on behalf of all others similarly situated and on behalf of the FLSA Collective (defined below), by their attorneys, complain of defendants SuperShuttle International, Inc., Shuttle Associates, LLC., a New York Limited Liability

Company, SuperShuttle Franchise Corporation, a Delaware Corporation, Veolia Transportation Services, Inc., a Maryland corporation dba "SuperShuttle" and their affiliates (collectively "Supershuttle" or "Defendant") as follows:

## NATURE OF ACTION

1.      Plaintiffs allege on behalf of themselves, and other similarly situated current and former SuperShuttle "franchisees" who worked or are working for Defendant in New York State, that they are entitled to, *inter alia,* (i) the return of sums unlawfully deducted from their wages in violation of Article 6 of the New York State Labor Law ("NYLL") § 193(1); (ii) the return or reimbursement of funds which plaintiffs were required to pay "by separate transaction" in violation of NYLL § 193(2); (iii) all damages authorized by NYLL § 198 and supporting New York State Department of Labor regulations, except for liquidated damages; (iv) past and future benefits under the Plans (defined below) provided for under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132; (v) damages under Article 19 of the NYLL and supporting New York State Department of Regulations for overtime pay, minimum wage and spread-of-hours pay; and (vi) damages under Fair Labor Standards Act, 29 U.S.C. §§ *et. seq.* ("FLSA") for overtime pay and minimum wages.

## JURISDICTION AND VENUE

2.      This action for declaratory, injunctive, and monetary relief is brought pursuant to Section 502 of ERISA, the Declaratory Judgment Act, 28 U.S.C. § 2201, and NYLL.  This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).  This Court also has jurisdiction of Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

3.      Venue herein is proper as a majority of Plaintiffs reside in this District, Defendant conducts business in this District insofar as Defendant maintains an office in Long Island City, New York, and the majority of services rendered by Plaintiffs on behalf of Defendant involved trips to and from airports located in this District.

## CLASS ALLEGATIONS

4.      Plaintiffs bring the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth and Ninth on their own behalf and on behalf of a class of persons pursuant to Federal Rule of Civil Procedure 23.

5.      Plaintiffs assert their New York Labor Law claims on behalf of

all persons who worked for SuperShuttle at any time from December 2, 2002 until the entry of judgment in this case (the "Class Period") and executed a "Unit Franchise Agreement," driving full-time (exclusive of time off for vacation and/or illnesses) pursuant to the terms of the "Franchise" agreement (the "Class")

6.      The persons in the Class are so numerous that joinder of all members is impracticable.  Although the precise number of such Class members is not currently known, and facts concerning such precise number are within the sole control of Defendant, upon information and belief, there are more than 100 members of the Class during the Class Period.

7.      There are questions of law or fact common to the Class which predominate over any questions affecting only individual members.  Questions of law and fact common to the Class which predominate over questions solely affecting individual members of the Class include the following:

a.      Whether the Class members have been misclassified as independent contractors by Defendant's Unit Franchise Agreements and Unit Franchise Offering Circulars for purposes of NYLL, ERISA and FLSA;

b.      Whether charges and deductions imposed by Defendant against the wages of Class members violates Labor Law §193(1);

3

c.   Whether payments made by Plaintiffs and Class members by separate transaction, which payments were required by Defendant or Defendant's operations, violate Labor Law §193(2);

d.   Whether Defendant failed to provide the Class with spread-of-hours compensation as required by the NYLL;

e.   Whether Defendant failed to pay Plaintiffs, the Class and the FLSA Collective minimum wage as required by NYLL and FLSA;

f.   Whether Defendant failed to pay Plaintiffs, the Class and the FLSA Collective overtime pay as required by NYLL and FLSA;

g.   Whether Class members are entitled to benefits under the Plans; and

h.   Whether Class members are entitled to injunctive relief under ERISA.

8.      The claims of the representative plaintiffs are typical of the claims of the Class. The named representative plaintiffs have suffered the same type of financial losses as other Class members in this case. Such losses stem from Defendant's policy and practice of misclassifying such Class members as franchisees in order to facilitate its practice of taking unlawful deductions from their wages in violation of New York law, and requiring them in violation of New York law to make payments that typically constitute an employer's cost of doing business. In addition, such misclassification has harmed Plaintiffs and the Class to the extent they have been excluded from the Plans and the enjoyment of any and all benefits due them under the Plans.

9.      The representative parties will fairly and adequately protect the interests of the Class.

10.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and benefits litigation in which individual plaintiffs lack the financial resources to prosecute such claims effectively against a corporate defendant.   The expense and burden of protracted litigation make it

impracticable for Class members to seek redress individually for unlawful conduct by each Defendant.  Moreover, if individuals were required to institute separate actions concerning the same issues raised by this action, the Court would be unduly burdened and the risk of inconsistent rulings, which might be dispositive of legal issues affecting nonparties, would be contrary to justice.

## COLLECTIVE ACTION ALLEGATIOINS

11.     Plaintiffs bring the Tenth and Eleventh Causes of Action, FLSA claims, on behalf of themselves and all similarly situated persons who drove for SuperShuttle full time and who elect to opt-in to this action (the "FLSA Collective").

12.     Defendants are liable under the FLSA for, *inter alia,* failing to properly compensate Plaintiffs. Upon information and belief, there are many similarly situated current and former driver employees of SuperShuttle who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to SuperShuttle, are readily identifiable, and can be located through SuperShuttle's records. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. §216(b).

## PARTIES

13.     Plaintiff Isaac Reid is a resident of Queens County, New York, and has worked for Defendant from in or about August 2001 to the present, during which time he was an employee of Defendant.

14.     Plaintiff Clement Green is a resident of Bronx County, New York, and has worked for Defendant from in or about June 2001 to the present, during which time he was an employee of Defendant.

15.     Plaintiff Robert B. Walker is a resident of Kings County, New York, and has worked for Defendant from in or about April 2002 to the present, during which time he was an employee of Defendant.

16.     Plaintiff Lionel Singh is a resident of Queens County, New York, and has worked for Defendant from in or about June 2004 to the present, during which time he was an employee of Defendant.

17.     Plaintiff Keith Clarke is a resident of Nassau County, New York, and has worked for Defendant from in or about March 2002 to the present, during which time he was an employee of Defendant.

18.     Plaintiff Ibrahima Bah is a resident of Bronx County, New York, and has worked for Defendant from in or about June 2007 to the present, during which time he was an employee of Defendant.

19.     Plaintiff Mamadou Wague is a resident of Bronx County, New York, and has worked for Defendant from in or about February 2005 to the present, during which time he was an employee of Defendant.

20.     Plaintiff Marie W. Dasney is a resident of Queens County, New York, and has worked for Defendant from in or about July 2005 to the present, during which time he was an employee of Defendant.

21.     Plaintiff Orville Harris is a resident of Queens County, New York, and has worked for Defendant from in or about December 2001 to the present, during which time he was an employee of Defendant.

22.     Plaintiff Gregory Morgan is a resident of Gwinnett County, Georgia, and has worked for Defendant from in or about March 2002 to October 2006, during which time he was an employee of Defendant.

23.     Plaintiff Trevor Francis is a resident of Kings County, New York, and has worked for Defendant from in or about April 2002 to June 2005, during which time he was an employee of Defendant.

24.     Plaintiff Everton Welsh is a resident of Kings County, New York, and has worked for Defendant from in or about January 2004 to March 2005, during which time he was an employee of Defendant.

25.     Plaintiff Frank Taylor is a resident of Kings County, New York, and has worked for Defendant from in or about January 2000 to October 2005, during which time he was an employee of Defendant.

26.     Plaintiff Seymour Lewis is a resident of Kings County, New York, and has worked for Defendant from in or about June 2001 to July 2004, during which time he was an employee of Defendant.

27.     Plaintiff Johann Ramirez is a resident of New Jersey and has worked for Defendant from in or about May 2002 to September 2005, during which time he was an employee of Defendant.

28.     Upon information and belief, defendant SuperShuttle International, Inc. ("SSI") is incorporated under the laws of Delaware with its principal place of business located in Scottsdale, Arizona.  According to its website, it is "the nation's leading shared-ride airport shuttle, providing door-to-door ground transportation to more than 8 million passengers per year."  Defendant SSI is and at all relevant times has been an employer covered by NYLL.  At

all relevant times, Defendant SSI served as the sponsor, within the meaning of ERISA §§ 3(16), 29 U.S.C. §§ 1002(16), and administrator of several employee benefit pension and welfare plans established under ERISA, including, but not limited to, Defendant SSI's Super Shuttle International, Inc. 401K Plan and SuperShuttle Flexible Benefit Plan.

29.     Upon information and belief, defendant SuperShuttle Franchise Corporation ("SSFC") is incorporated under the laws of Delaware with its principal place of business located in Phoenix, Arizona.  Defendant SSFC is and at all relevant times has been an employer covered by NYLL.

30.     Upon information and belief, defendant Shuttle Associates, LLC ("Shuttle Associates") is a New York limited liability company, with its principal place of business located in Long Island City, New York.  Defendant Shuttle Associates is and at all relevant times has been an employer covered by NYLL.

31.     Upon information and belief, defendant Veolia Transportation Services, Inc. ("Veolia") is incorporated under the laws of Maryland with its principal place of business located in Maryland.  It describes itself as "the largest private transportation provider in the US." Defendant Veolia is and at all relevant times has been an employer covered by NYLL.

32.     Defendant maintains the following benefit plans for its employees (hereinafter collectively referred to as the "Plans"):

a.      Super Shuttle International, Inc. 401K Plan ("401K Plan") is and/or was a defined contribution and profit sharing plan covered by ERISA for which all full-time employees of SuperShuttle were and are eligible upon the successful completion of a certain period of employment with SuperShuttle.  The 401K Plan is more specifically defined within documents produced to Plaintiffs Bates numbered "SS DEFS 00001-00260;"

b.      Upon information and belief, SuperShuttle Flexible Benefit Plan is and/or was a benefit plan covered by ERISA for which all full-time employees of SuperShuttle were and are eligible upon the successful completion of a certain period of employment with SuperShuttle;

c.      Super Shuttle International, Inc. Flexible Spending Account Plan ("Flexible Spending Account Plan") is a benefit plan covered by ERISA for which all full-time employees of SuperShuttle were and are eligible upon the successful completion of a certain period of employment with SuperShuttle.   The Flexible Spending Account Plan is more specifically defined within documents produced to Plaintiffs Bates numbered "SS DEFS 00261-00283;"

d.      Upon information and belief, Group Life and Accidental Death and Dismemberment Insurance Plan for Employees of SuperShuttle International, Inc. ("Group Life AD&D Plan") is a benefit plan covered by ERISA for which all full-time employees of SuperShuttle were and are eligible upon the successful completion of a certain period of employment with SuperShuttle.  The Group Life AD&D Plan is more specifically defined within documents produced to Plaintiffs Bates numbered "SS DEFS 00284-00305;"

e.      Upon information and belief, SuperShuttle International, Inc. Welfare Benefit Plan ("Welfare Benefit Plan") is a benefit plan covered by ERISA for which all full-time employees of SuperShuttle were and are eligible upon the successful completion of a certain period of employment with SuperShuttle.  The Welfare Benefit Plan is more specifically defined within documents produced to Plaintiffs Bates numbered "SS DEFS 00513-00568;"

f.      Upon information and belief, SuperShuttle International, Inc. Dental Care Plan ("Dental Plan") is a benefit plan covered by ERISA for which all full-time employees of

9

SuperShuttle were and are eligible upon the successful completion of a certain period of employment with SuperShuttle. The Dental Plan is more specifically defined within documents produced to Plaintiffs Bates numbered "SS DEFS 00569-00673; 00678-00707;"

       g.    Upon information and belief, SuperShuttle International, Inc. BlueCross BlueShield Group Health Plan ("Group Health Plan") is a benefit plan covered by ERISA for which all full-time employees of SuperShuttle were and are eligible upon the successful completion of a certain period of employment with SuperShuttle. The Group Health Plan is more specifically defined within documents produced to Plaintiffs Bates numbered "SS DEFS 00328-00512;" and

       h.    Upon information and belief, SuperShuttle International, Inc. Vision Care Plan ("Vision Care Plan") is a benefit plan covered by ERISA for which all full-time employees of SuperShuttle were and are eligible upon the successful completion of a certain period of employment with SuperShuttle. The Vision Care Plan is more specifically defined within documents produced to Plaintiffs Bates numbered "SS DEFS 00708-00752."

## STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION

33.    Defendant's business consists of providing airport transportation service to its customers in major metropolitan areas throughout the United States. Plaintiffs and Class members were hired by Defendant as drivers to pick-up Defendant's customers at airports, hotels and residences to provide shuttle transportation between them.

34.    Plaintiffs and Class members are required to sign a "SuperShuttle Unit Franchise Agreement" (hereinafter the "UFA") with defendant Shuttle Associates as a condition of employment. The UFA incorporates by reference in its entirety the Unit Franchise Operating Manual ("UFOM") which details the requirements, policies and operating procedures that

SuperShuttle drivers are required by the UFA to follow.  (UFA at 7.)  The UFOM can be changed by Defendant unilaterally at any time.  (UFA at 7-8 ("Manual") and 9 ("System Changes"); UFOM "Amendments and Franchise Bulletins".)

35.     Upon information and belief, during the Class Period, more than 300 shuttle drivers in New York State fall within the Class.  Such drivers include each of the Plaintiffs named herein.

36.     Defendant uses drivers, including Plaintiffs and Class members, for the purpose of providing Defendant's customers with the core service Defendant promotes as SuperShuttle's business.

37.     Defendant ostensibly sells drivers a ten-year "franchise" of Defendant's "system" of providing its core pick-up and drop off airport shuttle service to Defendant's customers for between $20,000 and $35,000, depending on how long ago the franchise was purchased.  (UFA at 2.)  Defendant permits Plaintiffs and drivers to finance such cost over a period of 7 years for a resulting total cost of nearly $40,000 to $60,000.  The "franchise" includes the right to provide such services within a certain "territory," which right is shared by an unlimited number of other drivers who may purchase other "franchises" within the same "territory."  (UFA at 3.)  Plaintiffs' and the class members' "Territory" includes the area surrounding JFK, LaGuardia and Newark airports in the New York metropolitan area.  (UFA Exh. "A".)

38.     Defendant exercises extensive control over the means by which its drivers perform their jobs.  For instance, Plaintiffs, like all drivers, may not refuse pick-ups of Defendant's customers.  A refusal to pick-up one of Defendant's customers results in a $50 fine to a driver.  (UFOM at 8.2.)  Drivers are not permitted to make pick-ups or drop-offs according to their own schedules and are often scheduled to pick-up multiple customers at different

locations simultaneously which leads to customer dissatisfaction and complaints that could serve as a basis for Defendant unilaterally terminating a driver's UFA.  Drivers are also not permitted to use their passenger vans for any other commercial purpose, and specifically are forbidden from competing with Defendant or any of its franchisees with respect to airport shuttle service anywhere. (UFA 2-3; UFOM at 4.8 – 4.9.)

39.     More specifically, Plaintiffs and Class members are required to pick-up and drop-off Defendant's customers according to times set up between Defendant and its customers through Defendant's "reservations system" and dictated to drivers through Defendant's "dispatch system."  (UFA at 11.)

40.     Plaintiffs are required to purchase or lease a specific type of passenger van to perform the passenger transportation services.  (UFA at 4.)  Most SuperShuttle drivers lease such van from a SuperShuttle-approved van dealership. The van must satisfy Defendant's strict appearance and functional requirements, which are set out in Defendant's UFOM.  (UFA at 4.) These requirements include that the van have a custom color of "SuperShuttle Blue," that it display SuperShuttle's trademark in a certain way, and that it have a certain passenger capacity. (UFOM at 3.1 - 3.4.)

41.     SuperShuttle drivers are also instructed by the UFOM on what the interior of the van must look like and how to maintain the interior appearance of the van.  (UFOM at 3.2 - 3.4.)

42.     Defendant's UFOM requires regular maintenance of Plaintiffs' vans in excess of those required by New York's Department of Motor Vehicle and/or the Department of Transportation.  (UFOM at 3.4 - 3.6.)

43.     SuperShuttle drivers are required to pay for all maintenance of the van, including regular oil changes and equipment repairs and replacement such as new tires.

12

44.     Defendant requires its drivers to arrive at Defendant's terminal in Long Island City at specified times to settle weekly expenses Plaintiffs are required to pay Defendant.  These weekly expenses include: (1) a "system fee" of $250 for Plaintiffs' use of Defendant's radio handset and routing/dispatch software and dispatch personnel; (2) a $155 "franchise fee"; (3) a $160 "insurance fee"; (4) a $142.62 for airport "fee reimbursement"; and (5) up to an approximately $180 shuttle van lease payment.

45.     Defendant employs dispatchers and other supervisory personnel to monitor Plaintiffs' and the Class's compliance with the strictly enforced policy and procedures of the UFOM, which Plaintiffs and the Class must adhere to pursuant to their UFAs.  Pursuant to the UFOM, Defendant may terminate a driver's "franchise" immediately without any opportunity to cure for a whole host of reasons, including that a customer complained about a driver's service. (UFA at 19-21; UFOM at 8.3 – 8.4.)

46.     Defendant pays its drivers based upon the number of Defendant's customers drivers shuttle between airports and hotels.

47.     Plaintiffs and all drivers employed by Defendant are subject to the direction and control of Defendant because their services constitute an integral part of and are indispensable to Defendant's business operations and core business purpose.

48.     The success or continuation of Defendant's business depends upon the personal services performed by plaintiffs and Class members.

49.     Plaintiffs and Class members render a personal and necessary service to defendant by driving vehicles displaying defendant's colors, marks and logos, by adhering to defendant's strictly controlled and assigned , by following Defendant's "system" that it defines as "a uniform method and philosophy of operation, customer service, marketing, advertising,

promotion, publicity, and technical knowledge relating to the airport shuttle business" on which Plaintiffs and the Class are extensively trained by defendant, and in other ways.

50.     Such personal services are a fundamental and integral part of Defendant's provision of services to its customers.  The personal services provided by Plaintiffs and other drivers do not involve the level of expertise typically requiring the use of independent professionals with special skills as opposed to employees.

51.     Furthermore, the services provided by Plaintiffs and other drivers are personal in that Plaintiffs do not hire their own employees to perform the services for defendant.

### The Uniform Franchise Agreement ("UFA"), Unit Franchise Operations Manual ("UFOM"), Defendant's Other Policies, Practices and Procedures, and Management Discretion Ensure Strict Control Over Drivers

52.     The UFA, which all drivers are required to sign as a condition of employment, sets forth the following statement, which purports to classify drivers, including the Class members, as independent contractors:

> 1.     Relationship of the Parties
>
> (1) Nothing herein contained shall be deemed or construed to create the relationship of principal and agent, partnership, joint venture or employment, or a fiduciary relationship, and the Franchisee shall not hold itself as an agent, legal representative, partner, subsidiary, joint venturer, servant or employee of [SA] or any affiliate of [SA].  With respect to all matters pertaining to the operation of the business conducted hereunder, the Franchisee is, and shall be, an independent contractor. …

(UFA at 31 – 32.)

53.     However, the UFA contains specific provisions intended to specifically control the manner and means by which Plaintiffs and drivers are expected to achieve defendant's results.  The UFA also incorporates by reference all of the policies and procedures detailed in the UFOM.

14

54.     Among other things, Plaintiffs and Class members are required to purchase or lease vehicles that meet Defendant's detailed specifications.  (UFA at 4.)   At all times, Defendant retains control over the selection of vehicles used by Plaintiffs for Defendant's intended use.  (UFA at 4.)  In addition, Plaintiffs and drivers are required, at their sole cost and expense, to maintain the vehicles in accordance with Defendant's standards and to allow Defendant to audit the records relating to such vehicle maintenance.  Defendant specifically reserves the right to inspect the vehicle at any time and "[t]he determination of whether the vehicle meets the standards set forth in [the UFOM] shall be at the discretion of [Defendant Shuttle Associates]." (UFOM at 3.5).

55.     Defendant also requires that Plaintiffs and drivers maintain liability insurance, naming Defendant as an insured, in the amount of $4 million dollars.  (UFOM at 13; UFOM at 4.3 – 4.4.)    Failure to maintain such insurance subjects drivers to "fines, penalties or other actions deemed necessary by [Shuttle Associates]."  (UFOM at 4.5.)

56.     Defendant requires that the vehicles driven by plaintiffs and other drivers be marked with SuperShuttle decals, have blue or grey interiors, running boards, specific colored bumpers, and have the "Van Number decal displayed between sun visors, center front above windshield of van."  (UFOM at 3.1 – 3.4.)  Other detailed and specific signage is required to be posted throughout the van, including a "Credit Card Acceptance, No Smoking and Gratuity" advisory required to be "located above the large passenger windows on the left side of the vehicle (42" long by 2 ½" wide)."  (UFOM at 3.3.)

57.     The UFOM confirms that Defendant seeks to control the means by which Plaintiffs and other drivers achieve defendant's business results by requiring drivers to "keep detailed trip sheet records in the form and with the detail specified by [Shuttle Associates], with

an accounting of your franchise business gross receipts and the number of passengers picked up and delivered to and from the airport, and the number and fares of any charter business for each day you are dispatched or perform SuperShuttle business" requiring such records to be made available to SA upon its request.  (UFOM at 4.7.)

58.     Defendant further requires drivers to deposit with Defendant $1500 from which Defendant can collect delinquent payments for regular business expenses of Defendant owed by Plaintiffs and the Class to Defendant each week pursuant to the UFA.

59.     Defendant expressly dictates in the UFOM that "[a]t no time are SuperShuttle drivers allowed to be out of uniform while on duty" (UFOM at 4.14) and that all drivers "shall be clean, courteous, efficient, and neat and appearance at all times and shall refrain from using improper language or act in a loud, boisterous, or otherwise improper manner."  (UFOM at 4.13.)  Drivers are forbidden from wearing any jacket, sweater or baseball cap other than those specifically approved by SuperShuttle and embossed with its logo.  (UFOM at 4.15.)

60.     Defendant requires drivers ensure that, among other things, the "interior and exterior of [their] vehicle must be free of dents, scratches or other damage which materially and adversely affects its appearance."  (UFOM at 3.5.)  Plaintiffs and the Class are strictly prohibited from displaying any "items of a personal nature (i.e., personal photographs, hanging objects such as religious objects, tassels, baby shoes, televisions, boom boxes, etc.)" or any "decals, signs, etc." anywhere on their vans.  (UFOM at 3.1.)

61.     Defendant requires that drivers adhere to its strict guidelines concerning driver safety.  Plaintiffs and the Class are required to attend extensive driver training courses, including courses related to "safe vehicle operations," "safe lifting practices," and "Smith System

Orientation," and "Defensive Driving Class." (UFOM at 4.11, 6.4.) Drivers are also required by the UFOM "to attend recurrent training or additional training programs." (UFOM at 4.11.)

62.     Through the "Mystery Rider Program" detailed in the UFOM, Defendant conducts random inspections of its drivers' van appearance, personal appearance and adherence to other SuperShuttle policies and procedures by having anonymous SuperShuttle management pose as SuperShuttle customers that are transported to and from the local airports unbeknownst to the drivers. (UFOM at 6.3.)

63.     The UFOM provides a "nonexclusive list of service standard defaults," which defaults are evaluated within the sole discretion of SuperShuttle management. (UFOM at 8.2 – 8.3.) Failure to immediately cure such defaults and/or the occurrence of multiple results "will likely result in termination" of a driver's UFA, which termination is also within the sole discretion of SuperShuttle and its management. (UFOM at 8.3.) The UFOM also provides a list of other circumstances the occurrence of which provides SuperShuttle the right to "immediate termination of [the UFA] with no opportunity to cure the default." (UFOM at 8.3 – 8.4.) Such circumstances include receiving a "critical customer complaint or airport complaint (e.g., missed flight; harassment; abusive treatment; etc.). (UFOM at 8.4.) These provisions in the UFOM and other policies of SuperShuttle render drivers' employment with SuperShuttle employment at will.

64.     The UFOM directs that drivers purchase or lease electronic communications equipment "allowing communication between the vehicle and the operations center." (UFOM at 3.2.) Such equipment is required to comply with Defendant's specifications. (Id.)

65.     Pursuant to the UFA and UFOM, drivers' own no exclusive right to provide SuperShuttle service within a particular geographic area. (UFA at 2-3; UFOM at 4.8 – 4.9.)

Instead, drivers compete with one another with the same geographic territory, to which they are specifically limited pursuant to the UFA.  (Id.)

66.     Pursuant to SuperShuttle policy, Plaintiffs and the Class are not allowed to operate more than one van within their "franchise."  This limitation severely hampers a driver's ability to make a profit driving for SuperShuttle.  For example, if the franchise fee of $155 and "system fee" of $250 were able to be spread over multiple vans, a driver's profit would necessarily increase.

67.     SuperShuttle drivers have virtually no control over who they transport to and from the airport.  Unless drivers are commanded by dispatch to pick-up SuperShuttle customers from hotels in Manhattan or the surrounding area for transport to the local airports, drivers must line-up at the local airports to pick-up Super Shuttle customers on a "first come, first served basis."   However, pursuant to SuperShuttle's strictly enforced policies, drivers are not allowed to wait for passenger pick-up at the airport for more than 20 minutes.  At the expiration of 20 minutes, drivers must leave the airport with however many passengers they might have in their vans.  Because drivers are paid exclusively by the amount of passengers they transport, this lack of control over the number of passengers they may take per trip from the airport negatively impacts a driver's ability to increase the money he earns.

68.     To add insult to injury, drivers are forced to pay a weekly airport use fee to SuperShuttle regardless of whether or not they were ever dispatched from the airport that particular week.  Such airport use fee is to be paid by livery drivers to the government regulatory authority to the extent airport pick-ups are made, but airport drop-offs do not trigger such fee. Instead of charging drivers fees based on whether such fees were actually due to the regulatory authority, SuperShuttle charges every driver as if the fee is due.  SuperShuttle does not return

18

any of the fees paid by drivers whose driving did not trigger the fee.  Moreover, such fees are costs of doing business for which Super Shuttle, not Plaintiffs and the Class, should be liable.

69.     Likewise, SuperShuttle demands payment of $115 for any ticket a driver might receive for a parking violation.  Upon information and belief, SuperShuttle has negotiated a reduced rate with the city of New York and Port Authority of New York and New Jersey whereby SuperShuttle vans would only be penalized $35 for parking tickets in exchange for SuperShuttle drivers foregoing their ability to dispute them.  SuperShuttle presumably keeps the $80 difference for every ticket Plaintiffs and the Class pay to Defendant.

70.     Drivers are also forced by SuperShuttle policy and personnel to effect repairs to their vans at repair shops chosen by SuperShuttle.  The prices at such repair shops are far in excess of those charged by other repair shops.  If a driver cannot afford to pay for a repair, in addition to the inflated cost imposed by the SuperShuttle-required repair shop, SuperShuttle charges 25% on the outstanding balance until it is paid off through deductions from weekly paychecks.

71.     Pursuant to SuperShuttle policy, if a driver is sent to a hotel for a pick-up and the passenger does not show up, the driver is not paid anything for such attempt.  Because the UFOM dictates that drivers wait at least 5 minutes beyond the scheduled pick-up time, drivers lose not only money but precious time within which they may have transported other SuperShuttle customers.  (UFOM at 4.12.)

72.     Plaintiffs and the Class regularly are forced to work more than 12 hours per day, six to seven days a week just to cover the fixed costs of approximately $900 per week (i.e., a "system fee" of $250, a $155 "franchise fee", a $160 "insurance fee", a $142.62 for airport "fee reimbursement", $180 shuttle van lease payment).  SuperShuttle passenger fares are typically

$19 per passenger per trip, 25% of which Plaintiffs and the Class must pay to SuperShuttle pursuant to the UFA. That means a driver would need 63 passenger trips per week just to cover business expenses that such driver is improperly paying on behalf of SuperShuttle. Unfortunately, drivers regularly get assigned only 2 trips per day, with an average of less than 50% passenger capacity per trip.

73.    The weekly fees of $900 are charged by SuperShuttle regardless of whether a driver performs any service for SuperShuttle during a particular week. As a result, drivers are forced to hire substitute drivers to drive for them on days they are sick or otherwise not able to drive their vans. Pursuant to the UFA and UFOM, substitute drivers must be trained and approved by SuperShuttle before they can operate a SuperShuttle van. Plaintiffs and the Class are responsible for paying such substitute drivers' training.

74.    Drivers are also required to pay all tariffs, licensing fees and any other fees incident to the operation of their SuperShuttle vans, which are costs of doing business that should be paid by SuperShuttle as the employer of Plaintiffs and the Class. (UFOM at 4.6 – 4.7.)

75.    The UFOM prohibits drivers from having anyone else in their vans except themselves and SuperShuttle customers. (UFOM at 4.13.)

76.    The UFA is and at all relevant times has been a contract of adhesion, drafted exclusively by Defendant and/or its legal counsel, providing no negotiation with drivers, who are required to sign it as a condition of employment. Plaintiffs and the Class are required to sign the form contract as is, without any changes made to the terms contained therein. The UFA specifically incorporates the UFOM and any policies SuperShuttle might promulgate, which policies can be changed unilaterally by SuperShuttle at any time. The UFA is, and at all material times has been unlawful, unconscionable and fraudulent in form and effect.

77.     SuperShuttle distributed to all prospective shuttle driver "franchisees" a Unit Franchise Offering Circular ("UFOC") that describes the nature of the relationship between Defendant SuperShuttle Associates, LLC and such shuttle van drivers as franchisor/franchisee. Appended to the UFOC are the UFA and UFOM, which are also incorporated by reference within the UFOC. The UFOC and the UFA and UFOM contained therein, which was distributed by SuperShuttle, sets forth misrepresentations that are collateral or extraneous to the UFAs eventually signed by Plaintiffs, the Class and the Collective.

### Effect of Defendant's Misclassification
### of Plaintiffs and Class Members as Independent Contractors

78.     Defendant misclassifies Plaintiffs and Class members for a variety of reasons involving avoidance of obligations arising under state and federal tax laws, social security, state unemployment insurance laws, workers' compensation laws, and other employment laws.

79.     In addition, Defendant profits from avoiding the expenses associated with its core business, *i.e.*, the transport of passengers to and from the major metropolitan airports, by deducting sums for such expenses from plaintiffs' compensation, which defendant characterizes as a "weekly settlement."

80.     With respect to other amounts not deducted directly from the wages of Plaintiffs and Class members, Defendant requires that plaintiffs and Class members make such payment by separate transaction. For example, drivers are required to pay for their own fuel.

81.     The sums either deducted by defendant directly from Plaintiffs' and Class members' wages or paid by Plaintiffs and Class members by separate transaction are not for the benefit of plaintiffs and Class members, but, rather, are for the benefit of Defendant and its business.

82.    The wages of Plaintiffs and Class members were subjected to deductions or charges for, among other things, the purchase or lease of a SuperShuttle-specified passenger van, required maintenance, fuel costs, equipment required by defendant, insurance, uniforms and $1,500 for deposit to Defendant to cover any shortfalls by drivers in paying the $900 in weekly fees.

83.    In addition, the wages of Plaintiffs and Class members were subjected to deductions of 25% of every passenger fare, $50 for refusals to pick-up passengers, $115 for parking tickets, exorbitant interest charged on amounts owed by drivers to SuperShuttle for the franchise purchase price of $20,000 and inflated repair costs, and deductions and penalties for other errors, omissions, and/or work Defendant or its customers deemed improperly performed.

84.    SuperShuttle failed to pay Plaintiffs, Class Members and members of the Collective overtime pay as required by NYLL and FLSA.

85.    SuperShuttle failed to pay Plaintiffs and Class members spread-of-hours pay as required by NYLL.

86.    SuperShuttle failed to keep accurate records of the work hours of Plaintiffs, Class members and members of the Collective as required by NYLL and FLSA.

87.    SuperShuttle failed to pay minimum wage to Plaintiffs, Class members and members of the Collective as required by NYLL and FLSA.

88.    Because the UFA specifically characterizes and misrepresents Plaintiffs to be independent contractors and because SuperShuttle and all of its management reiterated such characterization to Plaintiffs throughout their tenure as drivers, Plaintiffs had no reasonable basis to believe that inquiring of SuperShuttle about Plaintiffs' possible participation in any of SuperShuttle's ERISA plans would yield anything but denial by SuperShuttle.  As a result, it

would have been futile for Plaintiffs to seek any administrative remedies under any such ERISA plans.  Moreover, SuperShuttle never distributed to Plaintiffs or the Class or Collective any ERISA plan documents that could have disclosed such administrative avenues.

## FIRST CAUSE OF ACTION

### NYLL – Illegal Deductions From Wages
### (Brought on Behalf of Plaintiffs and the Class)

89.     Plaintiffs incorporate by reference all of the preceding paragraphs.

90.     At all times material hereto, the compensation paid by Defendant to Plaintiffs and Class members constituted "wages" within the meaning of Labor Law §§190(1) and 193.

91.     Other than deductions required by law, government rules or regulations (e.g., payroll taxes, child support orders, or wage garnishments), section 193 of the Labor Law prohibits an employer from making any deduction from an employee's wages, except those which the employee expressly authorizes in writing and are for that employee's benefit.

92.     Section 193 of the Labor Law expressly limits such "authorized deductions" to amounts for "insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee." (Labor Law §193(1)(b)).

93.     Defendant deducted amounts directly from the wages of Plaintiffs and Class members, which do not fall within the categories of authorized deductions.

94.     Defendant's ongoing deduction of amounts not constituting authorized deductions from the wages of Plaintiffs and Class members constitutes a violation of Labor Law §193(1).

95.     As a proximate result of the foregoing, Plaintiffs and Class members have been deprived of such amounts deducted from their wages and have incurred damages thereby.

## SECOND CAUSE OF ACTION

### NYLL – Illegal Payments by Separate Transaction
### (Brought on Behalf of Plaintiffs and the Class)

96.     Plaintiffs incorporate by reference all of the preceding paragraphs.

97.     Section 193(2) of the Labor Law prohibits employers from requiring an "employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction of wages under [Labor Law §193(1)]."

98.     Defendant required Plaintiffs and Class members to make payments by separate transaction to Defendant and/or third parties on behalf of Defendant in connection with charges that would not have constituted authorized deductions pursuant to Labor Law §193.

99.     Defendant's requirement that Plaintiffs and Class members make such payments constitutes a violation of Labor Law §193(2).

100.    As a proximate result of the foregoing, Plaintiffs and Class members have been deprived of such amounts deducted from their wages and have incurred damages thereby.

## THIRD CAUSE OF ACTION

### Common Law Misrepresentation
### (Brought on Behalf of Plaintiffs and the Class)

101.    Plaintiffs incorporate by reference all of the preceding paragraphs.

102.    Plaintiffs and the class they represent were purportedly hired by Defendant to work as "independent contractors" pursuant to the terms of the UFA and UFOM described above.   In fact, Defendant knew or should have known, at all times, that the "independent contractor" classification in the UFA and UFOM was improper and that Plaintiffs and all persons similarly situated were "employees" entitled to the benefits and protections of all laws enacted for employees.  Plaintiffs are informed, believe and on that basis allege, that through the UFA and UFOM Defendant intentionally misled Plaintiffs and the class they represent as to their

employment status, or made such representations to Plaintiffs and class members recklessly and/or negligently, all for the purpose of realizing unjust profits from Plaintiffs' work and/or to avoid paying for its operating costs and payroll taxes to increase its competitiveness.

103.    At all material times, Defendant either knew, or should have know that the material representation made to Plaintiffs in the UFA and UFOM concerning their employment status, and the concealment and/or non-disclosure of material facts to Plaintiffs concerning their employment status and Plaintiffs' corresponding obligation to assume responsibility for all of their "own" employment-related expenses including but not limited to purchasing or leasing, operating and maintaining expensive trucks, were false and fraudulent.

104.    At all material times, Defendant intended to and did induce Plaintiffs and the class they represent to reasonably and justifiably rely to their detriment on the false and fraudulent representations made to them by Defendant in the UFA and UFOM concerning their employment status and obligation to assume responsibility for all of employment-related expenses including but not limited to purchasing or leasing, operating and maintaining expensive trucks, and suffered damage as a direct and proximate result.

105.    By its aforesaid conduct, Defendant is guilty of oppression, fraud, and malice in violating Plaintiffs' rights and protections guaranteed by New York state law and other applicable law.

## FOURTH CAUSE OF ACTION

### Common Law Unjust Enrichment
### (Brought on Behalf of Plaintiffs and the Class)

106.    Plaintiffs incorporate by reference all of the preceding paragraphs.

107.    Despite the express terms of the UFA and UFOM, Plaintiffs' relationship with Defendant satisfies every aspect of the test for employment, and not for independent contractor status.

108.    Defendant controls virtually every aspect of the Plaintiffs' work and earnings, as set forth above.

109.    Despite this control and the actual status of the drivers as employees, Defendant mischaracterizes Plaintiffs as independent contractors.   As a result, these drivers must pay substantial sums of their own money for work-related expenses, including but not limited to the purchase or lease of vehicles meeting company specifications, and all costs of operating, insuring and maintaining those vehicles.

110.    The UFA and UFOM illegally and unfairly advantage defendant, by mischaracterizing the status of the Plaintiffs in that Defendant evades employment related obligations, such as social security contributions, workers' compensation coverage, and state disability and unemployment compensation, illegally shifting the expense of workers' compensation coverage, and other expenses to Plaintiffs.

111.    The UFA between Defendant and each Plaintiff and member of the class is void as against public policy and therefore unenforceable, as failing to recognize the employment status of the Plaintiffs and the class members, and therefore denying them the legally cognizable benefits of employment.

112.    The UFA between Defendant and each Plaintiff is an unconscionable contract of adhesion, which is unenforceable as contrary to the public interest, policy and law.

113.    The UFA and UFOM illegally shifts the burden of certain costs that an employer must pay.

114.    While acting on the direct instruction of Defendant and discharging their duties for Defendant, Plaintiffs and the class members incurred expenses for, *inter alia*, the purchase or lease, maintenance, operating costs and adornment of vehicles; insurance; and uniforms. Plaintiffs and the class members incurred these substantial expenses as a direct result of performing their job duties.

115.    By misclassifying its employees as "independent contractors," and further by contractually requiring those employees to pay Defendant's own expenses, defendant has been unjustly enriched.

116.    As a direct and proximate result of Defendant's conduct, Defendant has received substantial benefits to which it had no entitlement, at Plaintiffs and the class members' expense, including lost profits, self-employment taxes, premiums for insurance to replace workers compensation and disability benefits, business expenses, compensation of replacement workers, and other expenses.

117.    Plaintiffs are entitled to compensation for all of the business expenses they were illegally required by Defendant to bear, for all of the employment taxes, unemployment compensation and workers' compensation the Defendant should have but did not pay, and Plaintiffs are entitled to the *quantum meruit* value of their services as employees.

## FIFTH CAUSE OF ACTION

### Declaratory Judgment
### (Brought on Behalf of Plaintiffs and the Class)

118.    Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein, and further allege:

119.    An actual controversy has arisen between the Plaintiffs and Class members, on the one hand, and Defendant, on the other hand, relating to the following matters:

a.    Whether Defendant has unlawfully misclassified Plaintiffs and Class members as independent contractors, and have thus denied Plaintiffs and Class members of the common benefits of employee status, such as

i.    wages;

ii.    holiday pay;

iii.    workers' compensation;

iv.    unemployment insurance;

v.    contributions to the defendant's retirement plan;

vi.    income tax withholding;

vii.    meal, break and rest periods.

b.    Whether Defendant has unlawfully failed to pay benefits and compensation owing in a timely manner to Plaintiffs and Class members whose employment with Defendant ended, as required by New York law.

c.    What amounts Plaintiffs and Class members are entitled to receive in compensation and benefits.

d.    What amounts Plaintiffs and Class members are entitled to receive in interest on unpaid compensation due and owing.

e.    What amounts Plaintiffs and Class members are entitled to receive from Defendant in statutory penalties and interest.

120.    Plaintiffs and Class members further seek entry of a declaratory judgment in their favor which declares Defendant's practices as heretofore alleged to be unlawful and which

provides for recovery of all sums determined by this Court to be owed by Defendant, and each of them, to the Plaintiffs and Class members.

## SIXTH CAUSE OF ACTION

### ERISA
### (Brought on Behalf of the Plans, Plaintiffs and the Class)

121.   Plaintiffs and the Class incorporate by reference herein all preceding allegations of this complaint.

122.   Under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(a)(1)(B), Plaintiffs are entitled to clarify and enforce their rights and those rights held by absent Class Members pertaining to all benefits owed under the Plans.

123.   Plaintiffs and the Class Members are correctly classified as employees and have the right to payment of benefits pursuant to the Defendant's ERISA benefit plans.  Accordingly, under 29 U.S.C. §1132(a)(1)(B), Plaintiffs and the Class Members are entitled to declaratory relief and to pension, health, disability, group insurance, dependent care, and/or other benefits that were not paid as a result of their improper classification.

124.   Plaintiffs have either attempted to exhaust administrative remedies but were prevented by Defendant from exhausting such remedies, or exhaustion would be futile wherein Defendant has adjudged Plaintiffs and the Class Members to be independent contractors rather than employees.

125.   By wrongfully classifying Plaintiffs and the Class Members as ineligible under the Plans, Defendant has violated, and continues to violate, the terms of the Plans and Plaintiffs' rights thereunder.

## SEVENTH CAUSE OF ACTION

### NYLL Article 19 - Minimum Wages
### (Brought on behalf of Plaintiffs and the Class)

126.    Plaintiffs and the Class incorporate by reference herein all preceding allegations of this complaint.

127.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed above.

128.    At all times relevant, Plaintiffs and Class members have been employees of Defendants, and Defendants have been employers of Plaintiffs and Class members within the meaning of the NYLL §§ 651(5), 652 and supporting New York State Department of Labor Regulations.

129.    The minimum wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants and protect the Plaintiffs and Class members.

130.    Defendants failed to pay Plaintiffs and Class members the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

131.    Through their knowing or intentional failure to pay minimum hourly wages to Plaintiffs and the Class, Defendants have willfully violated the NYLL Article 19, §§ 650 et seq., and supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 NYCRR Part 142.

132.    As a result of Defendants' violations of the NYLL, Plaintiffs and the Class are entitled to recover from Defendants their unpaid wages, reasonable attorneys' fees and costs of this action, and pre-judgment and post-judgment interest.

## EIGHTH CAUSE OF ACTION

### NYLL Article 19 — Unpaid Overtime
### (Brought on behalf of Plaintiffs and the Class)

133.    Plaintiffs and the Class incorporate by reference herein all preceding allegations of this complaint.

134.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiffs and Class members.

135.    Defendants have failed to pay Plaintiffs and Class members the overtime wages to which they are entitled under the NYLL and supporting New York State Department of Labor Regulations.

136.    Through their knowing or intentional failure to pay Plaintiffs and the member of the Class overtime wages for hours worked in excess of 40 hours per week, Defendants have willfully violated the NYLL Article 19, §§ 650 et seq., and supporting New York State Department of Labor Regulations.

137.    As a result of Defendants' violations of the NYLL, Plaintiffs and the members of the Class are entitled to recover from Defendants their unpaid overtime wages, reasonable attorneys' fees and costs of this action, and pre-judgment and post-judgment interest.

## NINTH CAUSE OF ACTION

### NYLL - Spread-of-Hours Pay
### (Brought on behalf of Plaintiffs and the Class)

138.    Plaintiffs and the Class incorporate by reference herein all preceding allegations of this complaint.

139.    Defendants have willfully failed to pay Plaintiffs and Rule 23 Class members additional compensation of one hour's pay at the minimum hourly wage rate for each day during which they worked more than 10 hours.

140.    Through their failure to pay Plaintiffs and Rule 23 Class members spread-of-hours pay, Defendants have willfully violated the NYLL Article 19, §§ 650 et seq., and supporting New York State Department of Labor Regulations, including but not limited to l2 NYCRR §§ 142-2.4.

## TENTH CAUSE OF ACTION

### Fair Labor Standards Act - Minimum Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

141.    Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

142.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed above.

143.    At all times relevant, Plaintiffs and the FLSA Collective were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

144.    At all times relevant, Plaintiffs and the FLSA Collective were or have been employees within the meaning of 29 U.S.C. §§ 203(e), (m) and 206(a).

145.   At all times relevant, Defendants have been employers of Plaintiffs and the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

146.   Defendants failed to pay Plaintiffs and members of the FLSA Collective the minimum wages to which they are entitled under the FLSA.

147.   Defendants were required to pay directly to Plaintiffs and the FLSA Collective the applicable federal minimum wage for all hours worked.

148.   As a result of Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective have suffered damages in amounts to be determined at trial and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

149.   Defendants' unlawful conduct, as described in this Collective Action Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

## ELEVENTH CAUSE OF ACTION

### Fair Labor Standards Act - Overtime Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

150.    Plaintiffs and the Class incorporate by reference herein all preceding allegations of this complaint.

151.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 210 et seq., and supporting federal regulations apply to Defendants and protect Plaintiffs and the FLSA Collective.

152.    Defendants have failed to pay Plaintiffs and the members of the FLSA Collective overtime wages for hours that they worked in excess of 40 hours in a workweek.

153.    As a result of Defendants' unlawful acts, Plaintiffs and the FLS A Collective have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs and Class members demand the following relief:

(a)    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil procedure;

(b)    Designation of Plaintiffs' as representatives of the Class and counsel of record as Class Counsel.

(c)     A declaration that Plaintiffs and Class members are employees of Defendant and participants in the Plans;

(d)     An award of actual damages, pursuant to NYLL § 198, in an amount to be determined at trial for amounts deducted from Plaintiffs' wages that do not constitute authorized deductions under NYLL § 193;

(e)     An award of actual damages, pursuant to NYLL § 198, in an amount to be determined at trial for payments Plaintiffs and Class members were required to make by separate transaction that did not qualify as authorized or permitted charges under NYLL § 193;

(f)     An order requiring Defendant to rescind the UFA, and awarding restitution compensating for the reasonable value of the benefit provided to Defendant;

(g)     An order requiring Defendant to pay or otherwise credit the Plans, Plaintiffs and the Class Members for all ERISA benefits to which they are entitled;

(h)     An order allowing Plaintiffs to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, been employed by Defendants as shuttle van drivers. Such notice shall inform that that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

(i)     Unpaid overtime and minimum wage pay and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting United States Department of Labor regulations.

(j)     Unpaid overtime and minimum wage pay pursuant to NYLL Article 19, §§ 650 *et seq.*, and supporting New York State Department of Labor regulations (Plaintiffs do not seek liquidated damages under the NYLL on behalf of the Class);

(k)     An award of Plaintiffs' costs, pre-and post-judgment interest, expert witness fees, and reasonable attorneys' fees pursuant to NYLL Article 6 § 198, NYLL Article 19 § 663, ERISA § 502(g)(1), 29 U.S.A. § 1132(G)(1), FLSA § 216, 29 U.S.C. § 216 and other applicable law;

(l)     An award of punitive damages in an amount to be proven at trial;

(m)     Injunctive relief enjoining the Defendant from requiring payment and requiring repayment of any costs and expenses paid by Plaintiff and other persons similarly situated;

(n)     Any other relief this Court deems to be just and proper.

Dated:  February 12, 2009

Respectfully submitted,

Robert I. Harwood
Peter W. Overs, Jr.
HARWOOD FEFFER LLP
488 Madison Avenue, 8th Floor
New York, NY  10022
Tel:    (212) 935-7400
Fax:    (212) 753-3630

Salvatore G. Gangemi
GANGEMI LAW FIRM, P.C.
82 Wall Street, Suite 300
New York, NY  10005
Tel:    (212) 425-0630
Fax:    (212) 425-1421

Attorneys for Plaintiffs