UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

ISAAC REID, CLEMENT GREEN, ROBERT B. WALKER, LIONEL SINGH, KEITH CLARKE, IBRAHIMA BAH, MAMADOU WAGUE, MARIE W. DASNEY, ORVILLE HARRIS, GREGORY MORGAN, TREVOR FRANCIS, EVERTON WELSH, FRANK TAYLOR, SEYMOUR LEWIS, and JOHANN RAMIREZ on behalf of themselves and all others similarly situated,

      *Plaintiffs*,

 - against -

SUPERSHUTTLE INTERNATIONAL, INC., SUPERSHUTTLE FRANCHISE CORP., VEOLIA TRANSPORTATION SERVICES, INC. d/b/a SUPERSHUTTLE, and SHUTTLE ASSOCIATES, LLC,

      *Defendants*.
------------------------------------------------------------------ X

MEMORANDUM
AND ORDER

08-CV-4854 (JG) (VVP)

A P P E A R A N C E S :

 HARWOOD FEFFER LLP
  488 Madison Ave., 8th Floor
  New York, NY 10022
 By: Robert I. Harwood
  Peter W. Overs, Jr.
  *Attorneys for Plaintiffs*

 GANGEMI LAW FIRM, P.C.
  82 Wall St., Suite 300
  New York, NY 10005
 By: Salvatore G. Gangemi
  *Attorneys for Plaintiffs*

 MORGAN, LEWIS & BOCKIUS
  101 Park Ave.
  New York, NY 10178
 By: Edward Cerasia II

Christie Del-Rey Cone
Maronya C. Sharf
*Attorneys for Defendants*

JOHN GLEESON, United States District Judge:

Isaac Reid and 14 other named plaintiffs bring this putative class action under various state and federal employment laws. Defendants SuperShuttle International Inc., SuperShuttle Franchise Corporation, Veolia Transportation Services, Inc., and Shuttle Associates, LLC (collectively, "defendants") move under Federal Rule of Civil Procedure 12(b) to dismiss certain of plaintiffs' claims as subject to binding arbitration agreements, unexhausted, or time-barred. For the following reasons, the motions to compel arbitration and to dismiss are granted in part and denied in part.

## BACKGROUND

Plaintiffs' complaint was filed on December 2, 2008, and amended on February 12, 2009. The following facts, except where indicated, are drawn from the plaintiffs' amended complaint and are assumed to be true for the purposes of this motion.

Defendants provide airport transportation service to customers in metropolitan areas throughout the United States. Plaintiffs drove the vehicles transporting defendants' customers pursuant to SuperShuttle Unit Franchise Agreements ("UFAs") executed with defendant Shuttle Associates. Some of the plaintiffs signed UFAs on or before December 2, 2002 ("pre-2002 plaintiffs"). In addition, five plaintiffs signed UFAs containing an arbitration clause. Those plaintiffs are referred to by the parties as the "post-2005 plaintiffs."

Although the plaintiffs' contracts with Shuttle Associates are styled as "franchise agreements" and state that the "Franchisee[s]" are "independent contractor[s]," Amended Compl. ¶ 52, the thrust of the complaint is that defendants' extensive control over the plaintiffs' day-to-

day operations rendered plaintiffs employees of defendants. As a result, the plaintiffs bring eleven causes of action, alleging violations of New York State Labor Law, the federal Fair Labor Standards Act ("FLSA"), the Employment Retirement Income Security Act of 1974 ("ERISA") and common law. Specifically, the plaintiffs contend that in violation of the New York State Labor Law, the defendants: (i) illegally deducted from the plaintiffs' wages (First Cause of Action); (ii) illegally required the plaintiffs to make separate payments to cover unauthorized charges (Second Cause of Action); (iii) failed to pay plaintiffs the minimum wage (Seventh Cause of Action); (iv) failed to pay them overtime wages (Eighth Cause of Action); and (v) failed to pay them spread-of-hours pay (Ninth Cause of Action). In addition, the plaintiffs allege that the defendants failed to pay them the minimum wage (Tenth Cause of Action) and overtime wages (Eleventh Cause of Action) in violation of FLSA. The plaintiffs also allege that they are entitled to the defendants' ERISA benefit plans (Sixth Cause of Action), that the defendants intentionally misrepresented the plaintiffs' employment status (Third Cause of Action) and that the defendants were unjustly enriched as a result of this misrepresentation (Fourth Cause of Action). Finally, the plaintiffs contend that they are entitled to declaratory relief in this case (Fifth Cause of Action).

## DISCUSSION

A. *The Motion to Compel Arbitration*

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, reflects a Congressional policy in favor of enforcing arbitration clauses in contracts. *See, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24-25 (1991) (noting that FAA provisions "manifest a liberal federal policy favoring arbitration agreements." (internal quotations omitted)). The

FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Second Circuit has established a two-part inquiry for determining the arbitrability of claims arising out of contracts not covered by other federal statutes: "(1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute comes within the scope of the arbitration agreement." *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002) (internal citation omitted).

The defendants move to compel arbitration of the claims brought by five of the 15 named plaintiffs, the ones referred to as the "post-2005" plaintiffs. Specifically, defendants rely on arbitration clauses in five specific UFAs: a June 10, 2008 agreement signed by Ibrahim Bah; a May 31, 2005 agreement signed by Marie Dasney; a September 28, 2005 agreement signed by Orville Harris; a May 16, 2007 agreement signed by Lionel Singh; and a May 26, 2005 agreement signed by Mamadou Wague. Cerasia Decl. Ex. D.

Plaintiffs do not dispute that these agreements were executed or that they contain both an agreement to arbitrate certain claims and an agreement that certain proceedings shall be resolved on an individual rather than a collective basis ("the class action waiver"). However, they argue that the class action waiver is unenforceable under the Second Circuit's decision in *In re American Express Merchants' Litigation*, 554 F.3d 300 (2d Cir. 2009). They also argue that the arbitration provision as a whole is unconscionable. As discussed below, these arguments are meritless.

    1.    *The Class Action Waiver Is Valid*

In *American Express*, the Second Circuit addressed for the first time the enforceability, "under the federal substantive law of arbitrability," of an "arbitration clause[]

4

containing [a] class action waiver[]." *Id.* at 312. At the outset, the Court noted that "when 'a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 315 (quoting *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000)). In concluding that the plaintiffs had met this burden, the court relied on the "essentially uncontested" opinion of an expert economist retained by the plaintiff demonstrating that an individual antitrust plaintiff bringing a single tying claim under the Clayton Act would incur hundreds of thousands of dollars in litigation expenses but recover less than $40,000 in trebled damages. *Id.* at 317.

Fourteen months after the decision in *American Express*, the contours of the plaintiff's burden of establishing unenforceability to defeat a motion to compel arbitration are not clear. The "evidence" marshaled by plaintiffs here is obviously far less than that found sufficient in *American Express*. In lieu of an expert opinion, the plaintiffs here simply assert that "the cost of litigating the claims asserted here will easily eclipse the $1 million mark," and that "Plaintiffs' counsel has specific experience in prosecuting driver misclassification actions and has spent in excess of $1 million in time and expenses to date in an action that has only reached the summary judgment phase." Pl. Mem. 4. They also assert that the potential recovery "for the claims brought under [New York Labor Law ("NYLL")] yields $300,000." *Id.* at 4 n.3.

Plaintiffs' first two assertions, even if credited, shed little light on the cost of an individual claim. The claims asserted here involve 15 plaintiffs and encompass not only New York Labor Law, but claims under ERISA, FLSA, and state common law as well. The nature of the other driver misclassification action alluded to are unknown. Thus, to the extent that these claims are prohibitively expensive to litigate, it is not clear whether this expense results from the

5

inherent complexity of Labor Law claims or from the sheer number of individual plaintiffs and discreet claims involved. By contrast, the expert opinion in *American Express* persuasively reasoned that even a single tying claim under the Clayton Act would require an economic antitrust study that would cost "at least several hundred thousand dollars." 554 F.3d at 316. Thus, even if it is sufficient for a plaintiff to simply allege that an individual action would be cost-prohibitive, plaintiffs have failed to do so. Instead, they allege only that a 15-plaintiff suit containing 11 causes of action and spanning a period of over six years would cost well over $1 million, and that another action they are handling has also cost this amount.

The plaintiffs' assertions regarding the potential recovery are also unavailing. They are supported by "a true and correct copy of a 2008 annual Income Statement from a driver 'franchisee' of SuperShuttle." Overs Decl. Ex. A. This document suggests that during 2008, the driver in question reported $68,052 in revenue and paid SuperShuttle $56,322 in fees and other charges, for a net revenue of $11,730. It also estimates that the driver received $10,208 in tips. Plaintiffs apparently assume that this plaintiff's potential recovery under NYLL is approximately equal to the amount this plaintiff paid to SuperShuttle in 2008 ("approximately $50,000,") times the six years for which this amount is recoverable (due to the six-year limitations period governing this claim). Pl. Mem. 4 n.3. Aside from the fact that this estimate arbitrarily lops off 10% of plaintiff's payments, it also assumes, without justification, that 2008 was a representative year for this plaintiff, and that this individual is a representative plaintiff. Yet even if I were to credit these assertions, this plaintiff's potential recovery far outstrips the estimated recovery of the individual plaintiff in *American Express*. Furthermore, as discussed above, plaintiffs fail to allege what it would cost this prospective claimant to recover this amount.

6

Plaintiffs also suggest that this Income Statement demonstrates that prospective plaintiffs are unable to finance this litigation themselves. While that may be true, I do not regard it as especially probative. A plaintiff with a colorable $300,000 claim will undoubtedly find at least one lawyer willing to prosecute his case on a contingency basis, and plaintiffs have failed to demonstrate that it would be irrational for a lawyer to do so.

Although plaintiffs argue that their case is indistinguishable from *American Express*, they have failed to produce an expert opinion comparable to the one found compelling in that case. Indeed, they have failed to successfully *allege*, much less establish, that individual litigation of the claims at issue here would be cost-prohibitive. Furthermore, they have not requested a hearing on the matter or argued that they do not have control over the information necessary to make such a showing. Accordingly, I cannot conclude that enforcing the class action waiver in this case would grant defendants "de facto immunity" from liability under ERISA, New York Labor Law, or any other body of substantive law "by removing the plaintiffs' only reasonably feasible means of recovery." *American Express*, 320 F.3d at 320.

2. *The Arbitration Clauses Are Not Unconscionable*

Plaintiffs argue that "the arbitration clause should be rejected as unconscionable under § 2 of the FAA." Pl. Mem. 7. In New York,[1]

> [a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made -- i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.

*Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 11 (1988) (internal quotation marks omitted).

---

[1] Both plaintiffs and defendants assume that New York law governs this unconscionability argument.

7

Plaintiffs argue that the arbitration clause is procedurally unconscionable because they were required to sign the UFA "as a condition of their employment on a take-it-or-leave-it basis," "the UFA can be changed unilaterally by SuperShuttle at any time," and "Plaintiffs are much less sophisticated than Defendants." Pl. Mem. 7.[2] They assert that the clause is substantively unconscionable because "there is no rational economic self-interest served by individual drivers prosecuting their claims in arbitration due to the high cost thereof." *Id.*

Though I doubt that the "facts" argued by plaintiffs render the arbitration clause procedurally unconscionable, I need not reach the issue as plaintiffs have failed to demonstrate substantive unconscionability. The only reference to the cost of *arbitration*[3] in plaintiffs' memorandum is a citation to *Brower v. Gateway 2000, Inc.*, 676 N.Y.S.2d 574-75 (1st Dep't 1998), which suggests that arbitration before the AAA might cost a party more than $1,500. Given that the plaintiffs in this case stand to recover approximately $300,000 if successful, individual arbitration is only irrational if the plaintiffs' likelihood of success is infinitesimal. Based on the cost figures suggested by plaintiffs, the arbitration clause would only discourage the arbitration of frivolous claims, and is therefore not substantively unconscionable.

3.  *The Arbitration Provisions Govern All of the Post-2005 Plaintiffs' Claims*

"There is a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Oldroyd v. Elmira Sav. Bank., FSB,* 134 F.3d 72, 76 (2d Cir. 1998). Accordingly, arbitration clauses will be construed "as broadly as possible, resolving 'any doubts concerning the scope of arbitrable issues … in favor of arbitration." *Id.* (citations omitted).

---

[2] Defendants do not argue that plaintiffs' unconscionability argument is more properly construed as a challenge to the contract "as a whole" rather than the arbitration provision "specifically," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006); accordingly, I do not decide whether plaintiffs' unconscionability argument is more properly directed to the arbitrator.

[3] As discussed above, plaintiffs also allude to the potential cost of this action, as well as another civil action brought by plaintiffs' counsel, but these allegations shed little light on the arbitration costs faced by an individual plaintiff.

The affidavit submitted with defendants' motion alleges that plaintiffs Bah, Dasney, Harris, Wague and Singh signed UFAs containing an arbitration provision.[4] And the excerpts attached to the affidavit confirm that these plaintiffs did, in fact, agree to arbitrate certain disputes. The relevant UFAs signed by the plaintiffs contain the following provision: "any controversy arising out of this Agreement shall be submitted to the American Arbitration Association at its offices in New York, New York for arbitration in accordance with its commercial rules and procedures which are in effect at the time the arbitration is filed." In a letter submitted after oral argument, defendants assert that the arbitration provision covers "*all* of the Post-2005 Plaintiffs' claims in the Amended Complaint" -- even those based on their business relationships with the defendants before the applicable UFA was executed -- because the arbitration clause contains "no temporal limitation." Def. June 17, 2009 Letter . I agree.

The Second Circuit has held that arbitration clauses without an express limitation to "future' disputes" should be applied to any preexisting claims. *Coenen v. R.W. Pressprich & Co.,* 453 F.2d 1209, 1212 (2d Cir. 1972); *Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Int'l, Inc.* 198 F.3d 88, 99 (2d Cir. 1999). In *Smith/Enron Cogeneration Ltd. Partnership, Inc.*, Smith Cogeneration International ("SCI") contracted with a state-owned utility in the Dominican Republic to build and run a power plant. In its negotiations, SCI "encountered strong competition" from Enron, and they agreed in November 1993 to build and run the plant as a joint venture. *Smith/Enron Cogeneration Ltd. Partnership, Inc.*, 198 F.3d at 90. SCI eventually filed a civil action in the Dominican Republic, claiming that it was coerced into the partnership by Enron, that all of SCI's agreements with Enron were fraudulently induced, and that Enron tortiously interfered in SCI's negotiations with the Dominican Republic. The Enron

---

[4] In contrast to the other plaintiffs who signed the UFAs in their personal capacity, it appears that Singh's UFA was signed between SuperShuttle and a corporation of which Singh is an agent. Singh did not raise this as a defense to the enforceability of his UFA, so I do not address the issue here.

defendants sought to compel arbitration in federal court pursuant to a 1994 Agreement. SCI argued that because the conduct at issue predated the 1994 Agreement, it did not fall within that agreement's arbitration provision, which "provid[ed] for the arbitration of 'any dispute, disagreement, controversy or claim arising under or relating to any obligation or claimed obligation under the provisions of this Agreement." *Id*. The Second Circuit noted that "[a]s the arbitration clause here … does not contain any temporal limitation, the relevant inquiry is whether SCI's claims 'relat[e] to any obligation or claimed obligation under' the 1994 Agreement, *not when they arose*." *Id.* at 99 (emphasis added). Finding that the claims clearly related to obligations contained within the 1994 agreement, the court affirmed the district court's decision to compel arbitration.

The *Smith/Enron* case is applicable here. The relevant question is not when the plaintiffs' claims arose, but whether they arise under their agreements with the defendants. The UFAs clearly govern all aspects of the plaintiffs' relationship with SuperShuttle, including their claims that they were employees rather than independent contractors. Accordingly, "resolving any doubt with respect to the scope of the arbitration clause in favor of arbitration", *id*., I find that all of the post-2005 plaintiffs' claims are arbitrable.

Thus, claims that plaintiffs served as defendants' employees and were therefore entitled to ERISA benefits (Sixth Cause of Action), a minimum hourly wage (Seventh and Tenth Causes of Action), and overtime and spread-of-hours pay (Eighth, Ninth and Eleventh Causes of Action) prior to the execution of the UFAs at issue here are controversies "arising out of" these UFAs, and the post-2005 plaintiffs are required to arbitrate them. Similarly, claims that the defendants made illegal deductions from plaintiffs' wages (First Cause of Action) and required plaintiffs to make prohibited payments by separate transaction (Second Cause of Action) before

10

they signed a UFA ostensibly agreeing to incur such costs arise from that UFA. The same is true for claims that the defendants were unjustly enriched by plaintiffs (Fourth Cause of Action) prior to the execution of these UFAs.

In this case, as the parties stated during oral argument, all of the plaintiffs signed UFAs containing similar arbitration provisions during every year that they worked for defendants. However, in their respective attempts to increase or decrease the number of plaintiffs proceeding collectively in a given forum, plaintiffs and defendants have chosen to enforce those agreements selectively. As a result, I am only asked, by the defendants, to enforce the arbitration clauses in UFAs that also contain a class action waiver. The parties, of course, are free to enforce or neglect their contracts as they see fit. Accordingly, I have assumed the applicability of the presumption of arbitration here, and concluded that arbitration of all of the post-2005 plaintiffs' claims is appropriate.

Having resolved the motion to compel arbitration, I next consider whether any of the plaintiffs' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

B.  *Motion to Dismiss*

Motions to dismiss pursuant to Rule 12(b)(6) test the legal, not the factual, sufficiency of a complaint. *See, e.g.*, *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, 'the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'" (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998))). Accordingly, I must accept the factual allegations in the complaint as true, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (*per curiam*), and "draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995). However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

*Iqbal* offered district courts additional guidance regarding the consideration of motions to dismiss under Rule 12(b)(6). Citing its earlier decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Court explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal,* 129 S. Ct. at 1949 (internal citations and quotation marks omitted).

In this case, the defendants do not argue that plaintiffs have failed to state any *prima facie* claims. Instead, they argue that all claims accruing in 2002 or earlier are barred by the applicable statute of limitations and that plaintiffs' ERISA claims are barred because plaintiffs failed to exhaust their administrative remedies before bringing suit. These are affirmative defenses, *see* Fed. R. Civ. P. 8(c)(1) (statute of limitations); *Pease v. Hartford Life Accident Ins., Co.,* 449 F.3d 435 (2d Cir. 2006) (ERISA exhaustion). The plausibility requirement of *Twombly* and *Iqbal* has not yet been applied to an affirmative defense. Therefore, I conclude that "a complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense 'if the defense appears on the face of the complaint.'" *Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 332 F.3d 147 (2d Cir. 2003). The parties have offered no contrary interpretation.

1. *Plaintiffs' ERISA Claims*

   a. *Construing Plaintiffs' ERISA Claims*

Plaintiffs allege that they "are entitled to clarify and enforce their rights . . . pertaining to all benefits owed under the plan" and that they "have the right to payment of benefits pursuant to the Defendant's ERISA benefit plans." Amended Compl. ¶¶ 122-23. They also allege that "[b]y wrongfully classifying Plaintiffs . . . as ineligible under the Plans, Defendant[5] has violated, and continues to violate, the terms of the Plans and Plaintiffs' rights thereunder." *Id.* at ¶ 125. Accordingly, their ERISA claim is properly construed as an action "to recover benefits due to [them] under the terms of [their] plan[s], to enforce [their] rights under the terms of the plan[s], [and] to clarify [their] rights to future benefits under the terms of the plan[s]" under 29 U.S.C. § 1132(a)(1)(B). Plaintiffs do not allege that the provisions of the plans at issue themselves violated some provision of ERISA.

   b. *Exhaustion of Plaintiffs' ERISA Claims*

"[E]xhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy." *Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993). Defendants argue that plaintiffs' ERISA claims should be dismissed because they have failed to exhaust applicable administrative remedies.

> In their complaint, Plainffs allege that they
>
> have either attempted to exhaust administrative remedies but were prevented by Defendant from exhausting such remedies, or exhaustion would be futile wherein Defendant has adjudged Plaintiffs and the Class Members to be independent contractors rather than employees.

---

[5] The amended complaint refers to the defendants collectively as "Defendant." It also alleges that Defendant SSI "at all relevant times . . . served as the , , , administrator" of the employee benefit plans relevant here, Amended Compl. ¶ 28, and that plaintiffs were required to sign the UFAs "with defendant Shuttle Associates as a condition of employment." *Id.* at ¶ 34.

Amended Compl. ¶ 124.  These allegations implicitly admit that plaintiffs failed to exhaust whatever administrative remedies were available to them.  Accordingly, the elements of the defendants' affirmative defense of exhaustion are on the face of the complaint.  The plaintiffs also offer two excuses for their failure to exhaust.  The plaintiffs first argue that exhaustion of administrative review would be futile in this case.  Further, they argue that the question in this case is a legal one -- whether the plaintiffs are, in fact, employees -- and, thus, are inappropriate for administrative review.  I disagree.

A plaintiff's failure to exhaust can be excused by futility "[w]here claimants make a clear and positive showing that pursuing available administrative remedies would be futile." *Davenport v. Abrams,* 249 F.3d 130, 133 (2d Cir. 2001)(quoting *Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.3d 588, 594 (2d Cir. 1993)).  In *Davenport,* the Second Circuit held that an independent contractor could not demonstrate futility when she made no attempt to file a formal claim for benefits or request a summary plan description ("SPD").  *Davenport*, 249 F.3d at 133-34 ("The putative 'denial' of benefits contained in Times Mirror's February 26, 1998 letter to Davenport did not render futile further pursuit of her claims through the proper channels.").  The plaintiffs in this case, also independent contractors, did not make any attempt to file a claim for benefits and, thus, cannot demonstrate futility.

Next, the plaintiffs allege that the defendants "prevented" them from exhausting their administrative remedies. Specifically, the plaintiffs allege that SuperShuttle failed, as required by federal regulations, to:  (1) afford them a reasonable opportunity for full and fair review of the denial of benefits; (2) disclose material terms of the plan; (3) provide them with notification of an adverse benefit determination; (4) describe the information necessary for them to perfect their claims and (5) describe the plan's review procedures and time limits placed on

14

such procedures. 29 C.F.R. § 2560.503-1(l). These allegations do not excuse the plaintiffs' failure to exhaust.

Given that the plaintiffs never formally filed a claim for benefits and were never denied such benefits by SuperShuttle or the plan administrator, there would be no reason for SuperShuttle to provide the plaintiff with a reasonable opportunity for full and fair review of the denial of benefits. The plaintiffs' remaining arguments amount to an allegation that SuperShuttle did not provide them with sufficient information about the plan, preventing them from properly filing claims with the plan administrator. The Second Circuit has held that the plaintiff's lack of knowledge and access to claim procedures did not support her claim for a waiver of the exhaustion requirement. *Davenport,* 249 F.3d at 134 ("Ignorance of a claim procedure does not defeat the exhaustion requirement."). *Id.* at 133 n. 2. Furthermore, the Court quoted and adopted the district court's rejection of similar arguments made by an independent contractor, stating that "[i]n view of the fact that plaintiff's employer never considered her to be covered by the plan, it is not surprising that she was not provided with a[n] [SPD] in a routine way." *Id.* SuperShuttle's failure to provide the plaintiffs details about the plan's terms and procedures, which would have been contained within the SPD, is thus an insufficient ground to excuse their failure to exhaust. Moreover, the Second Circuit has held that "[e]ven if plaintiff[s were] unaware of [their] remedies under the plan prior to the institution of this action, [they] became aware of them now and yet inexcusably [have] failed to avail [themselves] of them." *Id.* at 134. Accordingly, the plaintiffs' arguments regarding exhaustion are unavailing. In order to bring their ERISA claims, their administrative remedies must be exhausted.

c. *Statute of Limitations and Accrual of Plaintiffs' ERISA Claims*

The defendants argue that the plaintiffs' claims are barred by the statute of limitations. An ERISA claim "accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff-regardless of whether the plaintiff has filed a formal application of benefits." *Carey v. Int'l Brotherhood of Electrical Workers Local 363 Pension Plan,* 201 F.3d 44, 49 (2d Cir. 1999).

Defendants contend that a clear repudiation occurred "on the date [plaintiffs] signed their UFAs and became independent contractors -- or certainly shortly thereafter -- because, at that time, each of the pre-2002 Plaintiffs knew or should have known that they would not be entitled to benefits." Def. Mem. 16-17. The defendants ask me to hold that, as a matter of law, when an individual executes an agreement containing the language alleged, he should know that his "employer's" benefits plan(s) have clearly repudiated his eligibility. Although the Second Circuit has not reached this issue, the Second Circuit has stated that a discussion of the when the plaintiffs' claims accrued is premature when the plaintiffs have failed to exhaust. *Davenport,* 249 F.3d at 135. Accordingly, I need not decide the issue now.

2. *Defendants' Remaining Limitations Arguments*

a. *FLSA*

Although defendants contended at oral argument that they were moving for dismissal of plaintiffs' FLSA claims on limitations grounds, their memorandum does not suggest the applicable limitations period or demonstrate how the applicability of this affirmative defense is apparent from the face of plaintiffs' complaint. Accordingly, I deny the motion to dismiss the FLSA claims on limitations grounds.

b. *New York Labor Law*

"All employees shall have the right to recover full wages, benefits and wage supplements accrued during the six years previous to the commencing of" an action under N.Y. Labor L. § 198. Plaintiffs argue that this period is tolled while the plaintiffs lack actual knowledge of their rights under New York law. Even if this principle, which is nowhere to be found in the statutory text and has never been announced by a New York court, is sound, the plaintiffs fail to allege the absence of such notice. Accordingly, the motion to dismiss plaintiffs' causes of action under the New York Labor Law (First, Second, Seventh, Eighth and Ninth Causes of Action) with respect to claims accruing before December 2, 2002 -- six years before the commencement of this action -- is granted.[6]

c. *Misrepresentation*

Defendants contend that claims for misrepresentation must be commenced either six years after the commission of the fraud or two years after that the fraud was discovered or could reasonably have been discovered, whichever comes later. The complaint does not allege any facts that would allow me to conclude, as a matter of law, when the fraud was or could reasonably have been discovered. Accordingly, this limitations defense is not plain from the face of the complaint, and defendants' motion to dismiss on this ground is denied.

d. *Unjust Enrichment*

An unjust enrichment claim accrues "upon the occurrence of the wrongful act giving rise to a duty of restitution" and must be brought within six years of accrual. Plaintiffs do not dispute that the alleged "wrongful act" here is the execution of the UFAs. They argue only that the limitations period is equitably tolled. As discussed above, however, they fail to point to

---

[6] Pursuant to Fed. R. Civ. P. 15(c)(1)(B), the causes of action alleged in the plaintiffs' amended complaint relate back to the date their original complaint was filed.

any allegation in the complaint suggesting that equitable tolling is appropriate. Accordingly, the pre-2002 misrepresentation claims are dismissed.

e. *Declaratory Judgment*

The complaint lists "declaratory judgment" as a "fifth cause of action." Amended Compl. 28. Defendants suggest that this claim should be dismissed to the extent it accrued prior to December 2, 2002. A declaratory judgment, however, is not a cause of action, but a form of relief that may be available if plaintiffs' substantive claims have merit. *See Luckenbach S. S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963). To the extent that any substantive claim is itself time-barred, of course, plaintiffs are not entitled to declaratory relief.

f. *Contractual Limitations Provisions*

Defendants also argue that all of the claims asserted by Bah, Dasney, Harris, Singh, and Wague should be dismissed as time-barred because the post-2005 UFAs they executed contain a limitations clause provided that "any . . . proceeding relating to this Agreement must be brought within one (1) year after the occurrence of the act or omission that is the subject of the . . . proceeding." Ex. F ¶ I.

I have already concluded that Bah, Dasney, Singh, Harris and Wague must proceed to arbitration with their claims. Accordingly, I need not reach this issue.

CONCLUSION

For the reasons stated above, the defendants' motion to compel arbitration and dismiss is granted in part and denied in part as follows:

The motion to compel as to the post-2005 plaintiffs, Bah, Dasney, Singh, Harris and Wague is granted in its entirety. The motion to dismiss plaintiffs' first, second, seventh, eighth and ninth causes of action, brought pursuant to New York State Labor Law, with respect

to claims accruing before December 2, 2002 is granted.  The motion to partially dismiss plaintiffs' misrepresentation claim (Third Cause of Action) is denied.  The motion to dismiss plaintiffs' claims alleging unjust enrichment (Fourth Cause of Action) to the extent any unjust enrichment claim accrued prior to December 2, 2002 is granted.  Plaintiffs' eligibility for declaratory relief, styled in the complaint as a fifth cause of action, will be determined in accordance with my rulings on plaintiffs' substantive causes of action.   The motion to dismiss the plaintiffs' ERISA claim (Sixth Cause of Action) is granted.  To the extent the defendants have moved to dismiss plaintiffs' tenth and eleventh causes of action, brought under FLSA, their motion is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
      March 22, 2010