**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

ISAAC REID, CLEMENT GREEN, ROBERT      :
B. WALKER, LIONEL SINGH, KEITH
CLARKE, IBRAHIMA BAH, MAMADOU          :
WAGUE, MARIE W. DASNEY, ORVILLE
HARRIS, GREGORY MORGAN, TREVOR         :
FRANCIS, EVERTON WELSH, FRANK
TAYLOR, SEYMOUR LEWIS, AND             :
JOHANN RAMIREZ on behalf of themselves
and all others similarly situated,     :

        Plaintiffs,     :      1:08-cv-04854 (JG)(VVP)

     -against-                      :

SUPERSHUTTLE INTERNATIONAL, INC.,      :
SUPERSHUTTLE FRANCHISE
CORPORATION, VEOLIA                    :
TRANSPORTATION SERVICES, INC., d.b.a.
SUPERSHUTTLE, SHUTTLE ASSOCIATES,      :
LLC.,
                   :

        Defendants.     :

                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

      This Settlement Agreement and Release (hereinafter "Settlement Agreement" or

"Agreement") is made and entered into by and between the following parties: Plaintiffs Isaac

Reid, Clement Green, Robert B. Walker, Orville Harris, Gregory Morgan, Trevor Francis,

Everton Welsh, Frank Taylor, and Johann Ramirez, individually and on behalf of all others who

are alleged to be similarly situated, and Defendants SuperShuttle International, Inc., SuperShuttle

Franchise Corporation, and Veolia Transportation Services, Inc. d/b/a Shuttle Associates, LLC,

(collectively "Defendants" or the "Company"), by and through their respective counsel of record,

and subject to the terms and conditions hereof and the approval of the Court.

1

1.      <u>Definitions</u>.  As used in all parts of this Settlement Agreement, and in all related settlement documents, the following terms have the meanings specified below:

1.1      "Complaint" means the Amended Class Action Complaint that was filed by Plaintiffs in this Action on or around February 12, 2009, Docket No. 11.

1.2      "Consent Form" is the Consent to Join Settlement and Authorization to Represent Form, as approved by the Court, in substantially the form of the document which is attached to this Settlement Agreement as Exhibit A.

1.3      "Court" means the United States District Court for the Eastern District of New York.

1.4      "Defendants" or the "Company" mean Defendants SuperShuttle International, Inc. ("SSI"), SuperShuttle Franchise Corporation ("SFC") and Veolia Transportation Services, Inc. ("Veolia") d/b/a Shuttle Associates, LLC ("Shuttle Associates").

1.5      "Defendants' Counsel" are Morgan, Lewis and Bockius LLP, and specifically Christopher A. Parlo, Melissa C. Rodriguez, and Leni D. Battaglia.

1.6      "Final Approval Order" or "Final Approval" or "Final Order" means an order to be entered and filed by the Court that finally approves this Settlement Agreement, in a form substantially similar to the "Final Approval Order and Judgment Approving Settlement" attached hereto as Exhibit B.

1.7      "Final Approval Date" means the date the Final Approval Order and judgment are entered, dismissing this action with prejudice in accordance with the terms of this Settlement Agreement.

1.8      "Franchise Purchase Financing Agreement" means any written financing agreement entered into between a franchisee and Shuttle Associates respecting the purchase of a franchise from Shuttle Associates.

1.9    "Last Known Address" or "Last Known Addresses" means the most recently recorded mailing address for a Settlement Class Member or Members as shown in Defendants' records.

1.10    "Litigation" or the "Lawsuit" or the "Action" mean the lawsuit entitled <u>Isaac Reid et al. v. SuperShuttle International, Inc. et al.</u>, United States District Court for the Eastern District of New York, Case No. 1:08-cv-04854 (JG)(VVP).

1.11    "Net Equity" means the amount of payments a Selling Franchisee has made, as of the date of transfer of a Unit Franchise Agreement, towards the principal amount of any Franchise Purchase Financing Agreement less any amounts such Selling Franchisee may owe on any accounts with Shuttle Associates.

1.12    "Notice Response Deadline" is the date forty-five (45) days after the Notice is first mailed to the Settlement Class Members by the Settlement Administrator.

1.13    "Participating Settlement Class Member" means each Member of the Settlement Class who does not opt out of the Action and the Settlement and who for purposes only of releasing claims under the Fair Labor Standards Act also submits a timely Consent Form to participate in the Settlement and/or negotiates a check to accept a payment as part of this Settlement.

1.14    "Parties" or "the Parties" collectively mean the Named Plaintiffs and Defendants herein, with each being referred to as a "Party."

1.15    "Person" means a natural person.

1.16    "Plaintiffs" means Isaac Reid, Clement Green, Robert B. Walker, Orville Harris, Gregory Morgan, Trevor Francis, Everton Welch, Frank Taylor, and Johann Ramirez, themselves and on behalf of the Members of the Settlement Class.

1.17    "Plaintiffs' Counsel" is Robert I. Harwood and Peter W. Overs, Jr. of Harwood Feffer LLP, and Salvatore G. Gangemi of Gangemi Law Firm, P.C.

1.18    "Preliminary Approval Date" is the date on which the Court enters the Preliminary

Approval Order.

1.19    "Preliminary Approval Order" or "Order Granting Preliminary Approval for the

Settlement and Setting a Settlement Hearing" mean an order to be executed and filed by the

Court, which preliminarily approves this Settlement Agreement, in a form substantially similar to

the "Order Granting Preliminary Approval of Settlement" attached hereto as Exhibit C.

1.20    "Releasees" means Defendants SSI, SFC, Veolia and/or Shuttle Associates. and each and

all of their affiliates, parents, subsidiaries, predecessors, successors, divisions, insurers, joint

ventures and assigns, and each of these entities' past or present directors, officers, managers,

employees, partners, members, principals, representatives, agents, servants, insurers, co-insurers,

re-insurers, shareholders, attorneys, personal or legal representatives and any other successor,

assign or legal representative.

1.21    "Released Federal Law Claims" shall collectively mean any and all employee benefits

and wage-and-hour claims, debts, obligations, guarantees, costs, expenses, attorneys' fees,

demands, actions, rights, causes of action, and liabilities against any Releasees, arising under

Federal law, including under the Fair Labor Standards Act of 1938 ("FLSA") and the Employee

Income Retirement Security Act ("ERISA"), of whatever kind and nature, character and

description, whether known or unknown, and whether anticipated or unanticipated, by a

Participating Settlement Class Member, that arose or accrued from December 2, 2002 up until

the date of Final Approval of this Settlement Agreement, for any type of relief, including without

limitation claims for damages, employee benefits, unpaid wages, premium pay, unpaid overtime,

adjustments to compensation, unreimbursed expenses, waiting-time penalties, or other penalties

for overtime, missed meal periods, and missed rest breaks; whether for attorneys' fees,

declaratory relief or injunctive relief; whether sounding in contract, tort, or otherwise; and which were or which could have been asserted in this Lawsuit against any Releasees, provided that any claim for any physical personal injury arising from any accident or incident occurring in connection with the provision of services under any franchise agreement is not waived or released and is preserved.

1.22    "Released State Law Claims" shall collectively mean any and all state unjust enrichment, misrepresentation and wage-and-hour claims, debts, obligations, guarantees, costs, expenses, attorneys' fees, demands, actions, rights, causes of action, and liabilities against any Releasees, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, by a Participating Settlement Class Member, that arose or accrued from December 2, 2002 up until the date of Final Approval of this Settlement Agreement, for any type of relief, including without limitation claims for damages, unpaid wages, premium pay, unpaid overtime, adjustments to compensation, alleged deductions from compensation, unreimbursed expenses, waiting-time penalties, or other penalties for overtime, missed meal periods, and missed rest breaks; whether for attorneys' fees, declaratory relief or injunctive relief; whether sounding in contract, tort, or otherwise; including any and all claims which were or which could have been asserted in the Complaint that arose under the laws of New York, including for unjust enrichment, misrepresentation, fraud, any failure to pay any type of overtime compensation or minimum wage to any Participating Settlement Class Member, any failure to pay timely wages, including payment of wages at termination, any alleged deduction from wages and/or allegedly illegal payments by separate transaction, any failure to provide or pay for meal breaks, and/or rest periods, all claims for penalties or additional damages, including without limitation waiting time penalties, provided that any claim for any physical personal injury arising

from any accident or incident occurring in connection with the provision of services under any franchise agreement is not waived or released and is preserved.  The Released State Law Claims include but are not limited to any claims arising under New York Labor Law ("NYLL") §§ 160 *et seq.,*190 *et seq.* (including, but not limited to § 191, § 193 and § 198), 215, 650, 12 N.Y.C.R.R. §§ 142-1.1. *et seq.* (including, but not limited to, § 142-2.2 and § 142-2.14), and any and all other claims under any similar statute which were or which could have been asserted in this Lawsuit

1.23    "Settlement Administrator" is The Garden City Group. Inc.

1.24     "Settlement Agreement" or "Agreement" means this agreement and the exhibits hereto, which the Settling Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.  "Settlement" means the settlement between the Parties embodied and contained in this Agreement.

1.25    "Settlement Class" means those individuals who entered into a Unit Franchise Agreement with Shuttle Associates at any time during the Settlement Class Period.

1.26    "Settlement Class Member" or "Member of the Settlement Class" means a Person who is a member of the Settlement Class.

1.27    "Settlement Class Notice" or "Notice" means a notice entitled "Notice of Settlement" to be approved by the Court, in a form substantially similar to the Notice attached hereto as Exhibit D.

1.28    "Settlement Class Period" is the period of time between December 2, 2002 and the date of execution of this Agreement.

1.29    "Settlement Class Representatives" and/or "Named Plaintiffs" mean Plaintiffs Isaac Reid, Clement Green, Robert B. Walker,  Orville Harris,  Gregory Morgan, Trevor Francis, Everton Welch, Frank Taylor, and Johann Ramirez.

1.30    "Settlement Hearing" or "Fairness Hearing" means a hearing to be set by the Court, to take place on a date set by the Court, for the purpose of determining the fairness, adequacy, and reasonableness of this Settlement Agreement and issuing a Final Approval Order.

2.    <u>Background And Introduction</u>.

2.1    Defendant Shuttle Associates has entered into Unit Franchise Agreements with franchisees who transport(ed) customers, for a charge or fare, to and from airports (John F. Kennedy, LaGuardia and Newark) within the New York metropolitan region.  The applicable Unit Franchise Agreements classify franchisees as independent contractors exempt from the provisions of the FLSA, ERISA, and applicable state wage-and-hour laws.

2.2    On December 2, 2008, the Settlement Class Representatives filed a Complaint in the United States District Court for the Eastern District of New York against Defendants, which they amended on February 12, 2009, alleging that they were misclassified as independent contractors, rather than employees, and thus are covered by the FLSA, the NYLL, and ERISA.  The Settlement Class Representatives sought minimum wages, overtime, and other benefits.  The Settlement Class Representatives also brought misrepresentation and unjust enrichment claims, and seek declaratory relief.

2.3    The Settlement Class Representatives brought the FLSA claims both individually and as an opt-in collective action pursuant to 29 U.S.C. § 216.

2.4     The Settlement Class Representatives also asserted ERISA claims and state law claims, including pursuant to the NYLL, which they would seek to certify as a class action pursuant to Fed. R. Civ. P. 23.

2.5     On March 22, 2010, the Court: (i) dismissed Plaintiffs' ERISA claims; (ii) compelled Ibrahima Bah, Marie W. Dasney, Orville Harris, Lionel Singh, and Mamadou Wague to submit their claims to arbitration and dismissed them from the case; and (iii) dismissed Plaintiffs' NYLL and unjust enrichment claims accruing prior to December 2, 2002.

2.6     Defendants deny any liability or wrongdoing of any kind associated with the claims alleged in the Complaint, and further contend that, for any purpose other than this Settlement, this action is not appropriate for treatment as a collective or class action.  Defendants contend, among other things, that they have complied at all times with the FLSA, ERISA, and NYLL, and that Shuttle Associates franchisees at all times have been properly classified as independent contractors and as not covered by the FLSA, ERISA, and NYLL.

2.7     The Settlement Class Representatives and Plaintiffs' Counsel believe that they have filed a meritorious action based on alleged violations of the FLSA, ERISA, NYLL, and New York common law and that treatment of this case as a collective and class action is appropriate.

2.8     It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or related to this Action which exist between them.

2.9     The Settlement Agreement is intended by the Settlement Class Representatives and Releasees to fully, finally, and forever resolve, discharge and settle the Released State Law Claims and Released Federal Law Claims upon and subject to the terms and conditions hereof, including but not limited to, all Released State Law Claims and all Released Federal Law Claims which were or which could have been asserted in the Litigation.  Defendants retain the right to

void the Settlement Agreement if any of the claims covered by this Settlement Agreement, including without limitation the Released State Law Claims and the Released Federal Law Claims, are not extinguished as of the Effective Date.

2.10    Plaintiffs' Counsel have conducted an investigation into the facts raised by the Complaint and participated in significant discovery, motion practice and a mediation session with a well-known and well-respected mediator.  Plaintiffs' Counsel recognize that certain Plaintiffs and claims have been dismissed from this case, that Defendants may rely on the Motor Carrier Act exemption to the overtime provisions of the FLSA and the NYLL, that many class members would have to pursue their claims as individual claims in arbitration, and that Defendants have strong arguments that the Settlement Class Members are properly classified as independent contractors.

2.11    Based on the foregoing, the Settlement Class Representatives and Plaintiffs' Counsel believe this Settlement with Defendants, for the consideration and on the terms set forth in this Settlement Agreement, is fair, reasonable, and adequate and is in the best interests of the Settlement Class Members in light of all known facts and circumstances.  Defendants and Defendants' Counsel also agree that the Settlement is fair, reasonable, and adequate in light of all known facts and circumstances.

3.    Terms of Settlement.

NOW, THEREFORE, in consideration of the mutual covenants, promises and warranties set forth herein, the Parties agree, subject to the Court's approval, as follows:

3.1    Agreement to Settle: It is agreed by and among the Parties that this Action, and any claims, damages, or causes of action arising out of the dispute which is the subject of this Action,

shall be settled and compromised, subject to the terms and conditions set forth in this Settlement Agreement and the approval of the Court.

Effective Date: The Settlement embodied in this Settlement Agreement shall become effective on the effective date (the "Effective Date"), which shall be the first date following: (i) the execution of this Settlement Agreement by all Parties and their counsel; and (ii) the entry of the Final Approval Order by the Court approving this Settlement, and dismissing this action with prejudice in accordance with the terms herein; and (iii) both the expiration of the time for filing any appeals from the Final Approval Order and the resolution of any such appeals in their entirety, provided that all material terms of the Settlement Agreement are upheld on appeal. Notwithstanding the foregoing: (i) the agreement of the Parties to maintain the terms of their Settlement as confidential has been in effect since on or about February 28, 2011, and will remain in effect through and after the Effective Date, except to the extent the Settlement Agreement is filed with the Court and the Settlement Class Representatives need to discuss the settlement terms with the Settlement Class Members; and (ii) any proceeding or order, or any appeal or petition for a writ pertaining solely to the award of Plaintiffs' Counsel's attorneys' fees shall not, by itself, in any way delay or preclude the Final Approval Order from becoming effective.

3.2     Consideration To Participating Settlement Class Members Who Have Unit Franchise Agreements With Shuttle Associates On The Preliminary Approval Date:

a.     *Consideration Through Defendants' New Franchise Transfer Plan ("Franchise Resale Opportunity Program" or "FROP")*:  Currently, nearly all Participating Settlement Class Members who wish to sell and transfer their Unit Franchise Agreement do not have a program available to them through which a sale of their respective Unit Franchise Agreements to a third-

party may be financed by Shuttle Associates or any of the Defendants.  Moreover, nearly all

Participating Settlement Class Members currently may only sell a franchise for the remaining

term of their franchise.  As part of this settlement, and in accordance with the terms set forth

herein and in the template FROP transfer documents attached hereto as Exhibit D, Defendants

are making available to eligible Participating Settlement Class Members a franchise transfer plan

or FROP that allows an eligible Participating Settlement Class Member to sell his or her

franchise in the form of a more valuable franchise and with financing assistance through Shuttle

Associates.  Eligible Participating Settlement Class Members may find a purchaser for their Unit

Franchise Agreement, or Shuttle Associates will assist in finding one upon request, as set forth

herein.  This is a great benefit to Participating Settlement Class Members as nearly all do not

currently have the option of obtaining assistance from Shuttle Associates in locating a purchaser

or transferee for their Unit Franchise Agreements or in financing the transaction.  Except for any

eligible Participating Settlement Class Member who finds his or her own Transferee, and as set

forth in sub-paragraph 3.2(a)(6) of this Settlement Agreement, Shuttle Associates is permitted to

sell three new Unit Franchise Agreements for every franchise sold or transfer effectuated via the

FROP for a Participating Settlement Class Member.  If there are no Participating Settlement

Class Members requesting a sale or transfer under the FROP or assistance in identifying a

transferee for purposes of the FROP, Shuttle Associates is not limited in the number of

franchises it may sell without having to refer a Transferee to a Participating Settlement Class

Member.  Eligible Participating Settlement Class Members who locate their own Transferee will

not have to wait for Shuttle Associates to sell three new franchises and may sell their Unit

Franchise Agreement immediately as part of the FROP.  In addition, another significant benefit

of this franchise transfer plan is that eligible Participating Settlement Class Members who

participate in the FROP will also receive the full value of a new franchise at the average price of the last five franchises sold by Shuttle Associates and any Selling Franchisees, as such term is defined herein (less any balance still owed to Shuttle Associates), plus interest at a rate of 15% per annum or the highest legal rate, regardless of how much equity they initially paid into their Unit Franchise Agreement.  For instance, if an eligible Participating Settlement Class Member purchased his or her Unit Franchise Agreement for $25,000 and has paid that amount off completely (i.e. no outstanding balance owed to Shuttle Associates), and the current average price of the last five franchises sold is $35,000, the Participating Settlement Class Member will receive the full $35,000 -- $10,000 more than they paid into his/her Unit Franchise Agreement -- plus the full amount of interest collected by Shuttle Associates on amounts owed to the Participating Settlement Class Members by the purchaser.  Thus, the FROP affords a significant monetary benefit to eligible Participating Settlement Class Members which to nearly all was not available previously.

> (1)    Participating Settlement Class Members who have Unit Franchise Agreements with Shuttle Associates on the Preliminary Approval Date and who meet the FROP eligibility requirements set forth in sub-paragraph 3.2(a)(2) of this Settlement Agreement, will be afforded the opportunity to participate in the FROP, in accordance with the terms set forth below and in the template FROP transfer documents attached hereto as Exhibit D.

> (2)    Eligibility requirements:  Participating Settlement Class Members who have a 10-year Unit Franchise Agreement with Shuttle Associates and who are in good standing under the terms of their Unit Franchise Agreement on the Preliminary Approval Date will be eligible to participate in the FROP.

Participating Settlement Class Members who have a 10-year Unit Franchise Agreement on the Final Approval Date (including having a monetary balance under $1,500.00) and who on that date have a monetary balance up to a maximum of $1,500.00 in their accounts with Shuttle Associates may also be eligible to participate in the FROP, provided such Participating Settlement Class Member signs a Promissory Note, substantially in the form attached hereto as Exhibit F, agreeing to pay the balance through a reduction in the payments that the Participating Class Member would otherwise receive through the FROP resale or transfer.  Specifically, instead of forwarding to the Participating Settlement Class Member who elects to participate in the FROP (the "Selling Franchisee"), his or her full portion of the weekly payments received from the individual who purchases and/or to whom the franchise and/or Unit Franchise Agreement is re-sold or transferred ("Transferee") as set forth in sub-paragraph 3.2(a)(9) of this Settlement Agreement, Shuttle Associates will retain the amount designated in the Promissory Note until the Selling Franchisee's balance is satisfied.  The Selling Franchisee's monetary balance is not released by any resale, transfer or participation in the FROP or any other action until and unless the entire balance is satisfied.

(3)     If an eligible Participating Class Member wishes to sell or transfer his or her franchise through the FROP, he or she shall:  (1) either inform Shuttle Associates in a dated writing of the identity of the proposed Transferee or request in a dated writing that Shuttle Associates assist him or her in identifying a potential candidate to whom the eligible Participating Settlement Class Member

may sell his or her business; and (2) enter into the current form of Shuttle Associates' Unit Franchise Agreement substantially in the form attached hereto as Exhibit G, which includes the FROP provision, modified to reflect Selling Franchise's remaining term under Selling Franchisee's Original Unit Franchise Agreement and any renewal term then remaining (the "Selling Franchisee's New Unit Franchise Agreement").

(4)     Any Transferee must meet the criteria for new franchisees described in the applicable sections of the 2011 Franchise Disclosure Document ("FDD").

(5)     The Parties and their respective counsel agree and acknowledge that, except as set forth in sub-paragraphs 3.2(a)(6) & (12) of this Settlement Agreement, there is no guarantee with respect to the length of time it may take to identify a prospective Transferee candidate to whom an eligible Participating Class Member may sell his or her business.  Thus, in the event Participating Settlement Class Members are not able to locate a purchaser for their Unit Franchise Agreement, Defendants make no guarantee with respect to how long it will take for them to sell three Unit Franchise Agreements before one is available for participation in the FROP.  In the event that a Selling Franchisee's Unit Franchise Agreement expires prior to selling or transferring his/her franchise through the FROP, to participate in the FROP, the Selling Franchisee may renew his/her franchise in accordance with the terms of Selling Franchisee's applicable Unit Franchise Agreement.

(6)     Except as set forth in sub-paragraph 3.2(a)(12) of this Settlement Agreement, Shuttle Associates is permitted to sell three new franchises before it

has to refer a Transferee to a Participating Settlement Class Member to effectuate a franchise sale or transfer through the FROP (the "3:1 ratio"). Participating Settlement Class Members who find prospective Transferee candidates on their own initiative are entitled to sell their franchises under the FROP immediately without regard to Shuttle Associates' right to sell three new franchises before a sale or transfer through the FROP. If there are no Selling Franchisees requesting a sale or transfer under the FROP or assistance in identifying a transferee for purposes of the FROP, Shuttle Associates is not limited in the number of franchises it may sell without referring a Transferee to a Participating Settlement Class Member. The Parties and their respective counsel agree and acknowledge that there is no guarantee with respect to whether a potential Transferee will accept the terms of a sale or transfer pursuant to the FROP. Thus, the Parties and their respective counsel further agree and acknowledge that, in the event that a potential Transferee referred by Shuttle Associates to a Selling Franchisee does not agree to purchase the Selling Franchisee's franchise pursuant to the FROP, Shuttle Associates may directly sell a new franchise to any such potential Transferee outside of the FROP. Defendants agree not to take any action to discourage a potential Transferee from purchasing a Selling Franchisee's franchise pursuant to the terms of the FROP.

(7)     Except as set forth in sub-paragraphs 3.2(a)(6) & (12) of this Settlement Agreement, eligible Participating Settlement Class Members who have entered into Shuttle Associate's current form of Franchise Agreement modified to reflect the Selling Franchisee's remaining term under Selling Franchisee's Original Unit

Franchise Agreement and any renewal term then remaining, and who make a written request for assistance in identifying a Transferee for purposes of the FROP within seven (7) calendar days of the Final Approval Date, shall be referred to Transferee candidates in descending order according to the length of time such Participating Settlement Class Members have operated their franchises (i.e., on a "first in, first out" basis). After this seven (7) calendar day period from the Final Approval Date, eligible Participating Settlement Class Members who have entered into Shuttle Associate's current form of Franchise Agreement modified to reflect the Selling Franchise's remaining term under Selling Franchisee's Original Unit Franchise Agreement and any renewal term then remaining and who make a written request for assistance in identifying a Transferee for purposes of the FROP, shall be referred to Transferee candidates in the order in which Participating Settlement Class Members request assistance from Shuttle Associates to identify a Transferee Candidate, starting with the earliest written request (i.e., on a "first come, first served" basis).

(8)     Transferees under the FROP will sign and enter into Shuttle Associates' Unit Franchise Agreement in place at the time of the sale and/or transfer. Transferees under the FROP must pay a purchase price for their new franchise that is at least equal to the average initial franchise fee being charged by Shuttle Associates for the last five franchises sold by Shuttle Associates at the time of the sale and/or transfer, which is currently $35,000. Franchises sold or transferred under the FROP will receive a new initial 10-year term and renewal option under

the terms of the Unit Franchise Agreement in place at the time of the sale and/or transfer.

(9)     Except as set forth in sub-paragraph 3.2(a)(12) of this Settlement Agreement, as part of the FROP, the Company will offer financing for the Transferee's purchase price, up to the average initial franchise fee being charged by Shuttle Associates for the last five franchises sold at the time of the sale or transfer, which is currently $35,000.  The term of the loan will be for seven (7) years and the Transferee must pay interest on the principal balance of the loan at the rate of 15% per annum or the highest legal rate, if lower.  The Transferee will also sign a Promissory Note substantially in the form attached hereto as Exhibit E. The down-payment will be applied first against any franchise fee amount owed by the Selling Franchisee to Shuttle Associates with the balance, if any, to the selling franchisee.  The Transferee will make weekly payments, which will include principal and interest, to Shuttle Associates.  The weekly payments will be allocated as follows: (i) payment of a $25.00 weekly management fee to Shuttle Associates; (ii) payment of any amounts still owed by the Selling Franchisee or Transferee to Shuttle Associates; (iii) payment of interest on the purchase price amount financed; and (iv) the balance to the Selling Franchisee.  All interest paid by Transferee on the balance remaining after full payment of any franchise fee amount owed by the Selling Franchisee to Shuttle Associates will be allocated to Selling Franchisee in full.  Thus, for example, if the franchise purchase price is $35,000, and Selling Franchisee owes $2,000 at the time of transfer, upon Transferee's repayment to Shuttle Associates of the $2,000 amount still owed by

Selling Franchisee to Shuttle Associates, Selling Franchisee will then receive all interest amounts paid by Transferee on the remaining $33,000 balance. If the Transferee is delinquent on any amounts owed to Shuttle Associates under his or her Unit Franchise Agreement, Shuttle Associates may allocate, in its discretion, all or a portion of the weekly payments to the delinquent amounts before paying anything to the Selling Franchisee.

(10)   If the Transferee defaults on the Promissory Note and Shuttle Associates decides to terminate the Transferee's Unit Franchise Agreement, Shuttle Associates shall notify the Selling Franchisee, who shall have the option within sixty (60) days of the notice to: (a) revert into the Selling Franchisee's New Unit Franchise Agreement with Shuttle Associates that incorporates the remaining term of Selling Franchisee's Original Franchise Agreement at the time of the FROP sale and resume operating the franchise business, or (b) find another Transferee to whom the Selling Franchisee's franchise may be sold pursuant to the FROP and resume operating the franchise business. In the event that a Selling Franchisee's New Unit Franchise Agreement expires prior to the end of this sixty (60) notice period, the Selling Franchisee may renew his/her franchise in accordance with the terms of Selling Franchisee's New Unit Franchise Agreement. If the Selling Franchisee still owes Shuttle Associates any amounts under any Promissory Note relating to the Selling Franchisee's Original Unit Franchise Agreement, the Selling Franchisee must repay those amounts upon the terms of the original Promissory Note(s), minus any payments applied against them during the Transferee's ownership. The Selling Franchisee shall also have

the right to pursue legal action against the Transferee for any sums the Transferee may owe the Selling Franchisee pursuant to the Consent to Transfer, independent from any Settlement Agreement and Release involving Selling Franchisee and Shuttle Associates.

(11)    Every eligible Participating Settlement Class Member who wishes to sell or transfer their franchise through the FROP must sign a General Release in the form attached hereto at Exhibit A, and enter the current form of Franchise Agreement, including the FROP provision, modified to reflect Selling Franchise's remaining term and any renewal term then remaining, if any, as a precondition to being able to sell or transfer through the FROP.

(12)    *Alternative FROP provisions for Certain Named Plaintiffs*: Notwithstanding the provisions in sub-paragraphs 3.2(a)(1)-(11) of this Settlement Agreement, Defendants agree to pay a lump-sum to Isaac Reid and Robert W. Walker only, equal to the principal amounts they have each paid toward their franchises (without interest) as of the Effective Date as set forth above in sub-paragraph 3.2 in connection with the sale of their franchises.  These principal amounts will not be deducted from the Total Settlement Amount. Notwithstanding the provisions in sub-paragraph 3.2(a)(6) of this Settlement Agreement, Defendants agree to issue these payments to Isaac Reid and Robert W. Walker as soon as practicable after the Effective Date, and before Shuttle Associates sells any new franchises or any other current franchisee sells or transfers his or her franchise under the FROP.  Although Isaac Reid and Robert W. Walker will not be subject to the 3:1 ratio set forth in sub-paragraph 3.2(a)(6)

of this Settlement Agreement in order to receive the principal amounts set forth in this sub-paragraph 3.2(a)(12), the sales of their franchises will count for the 3:1 ratio for purposes of any other eligible Participating Settlement Class Members. That is, after the sale of Isaac Reid's and Robert W. Walker's franchises, Shuttle Associates will be allowed to sell 11 franchises (including Isaac Reid's and Robert W. Walker's franchises) before referring a Transferee to an Eligible Participating Settlement Class Member for a FROP sale. As set forth in sub-paragraph 3.2(a)(6), if an Eligible Participating Settlement Class Member finds his or her own buyer, they will not have to wait for the 3:1 ratio to be completed. The provisions of this sub-paragraph 3.2(a)(12) apply to Isaac Reid and Robert W. Walker only, and do not, and shall not in any way be construed to, apply to anyone else, including any other Participating Settlement Class Member.

b.    *Additional consideration to Participating Settlement Class Members who have Unit Franchise Agreements with Shuttle Associates on the Preliminary Approval Date:*  As additional consideration to Participating Settlement Class Members who have Unit Franchise Agreements with Shuttle Associates on the Preliminary Approval Date, Defendants further agree to:

(1)    Institute a mechanism whereby, prior to the termination of any franchise of any Participating Settlement Class Member by Shuttle Associates, such proposed franchise termination will be reviewed by SFC's Chief Financial Officer and/or Vice President of Regulatory Affairs and/or their designee(s).

(2)    Institute a mechanism whereby the suspension of the franchise of any Participating Settlement Class Members will be reviewed, upon request from the

suspended franchisee, by SFC's Chief Financial Officer and/or Vice President of
Regulatory Affairs and/or their designee(s) within 48 hours of the suspension,
provided that suspensions occurring on a Friday or Saturday will be reviewed
within 72 hours.  Such review shall include an opportunity for the suspended
franchisee to, within the 48-hour or 72-hour period, as applicable, provide written
documents or hard-copy materials (including, without limitation, a written
narrative by the suspended franchisee) on the factual circumstances giving rise to
any such suspension.  Defendants also agree to suspend the Participating
Settlement Class Member's system fee on a pro rata basis if the suspension
review takes longer than the 48-hour or 72-hour period, as applicable, because of
any conduct or situation caused by Defendants and retroactively for any period
during which the Company determines that a suspension was not warranted.

(3)     Issue a memorandum in the form attached hereto as Exhibit H clarifying
the situations that currently may lead to "yarding" drivers.

3.3     <u>Consideration To Participating Settlement Class Members Who Do Not Have Unit
Franchise Agreements with Shuttle Associates On The Preliminary Approval Date (And Who
Are Not Settlement Class Representatives)</u>:  Defendants will pay a total amount of $100.00 (One
Hundred Dollars and Zero Cents) to each Participating Settlement Class Member who does not
have a Unit Franchise Agreement with Shuttle Associates on the Preliminary Approval Date (and
who is not also a Settlement Class Representative).

3.4     Case Contribution Awards to Settlement Class Representatives:

a.        Subject to Paragraph 3.6, Defendants agree to pay the following amounts to the

following individuals for their roles in bringing and prosecuting this case, including for

appearing for depositions, producing documents, and otherwise assisting in this case:

        1)        Isaac Reid - $10,000

        2)        Clement Green - $7,500

        3)        Robert Walker - $9,500

        4)        Orville Harris - $2,500

        5)        Gregory Morgan - $1,000

        6)        Trevor Francis - $1,000

        7)        Everton Welch - $1,000

        8)        Frank Taylor - $1,000

        9)        Johann Ramirez - $1,000.

b.        Plaintiffs' Counsel shall provide counsel for Defendants with the pertinent

taxpayer identification numbers and W-9 forms for each Settlement Class Representative within

five (5) days after the Effective Date.

3.4    Administrative Costs: The Parties agree that all reasonable costs associated with the

administration of this Settlement, including but not limited to postage, printing of Notices and

the Settlement Administrator's fees and costs (the "Administrative Costs"), up to a maximum of

$25,000.00, will be paid by Defendants.

4.    Payment of Settlement Amounts and Tax Treatment.

4.1    Defendants, themselves or through the Settlement Administrator, and according to the

terms, conditions and procedures set forth in this Agreement, will make the settlement payments

outlined in this Settlement Agreement.  For each settlement payment, Defendants, themselves or

through the Settlement Administrator, will report each payment to all applicable government authorities, including the Internal Revenue Service, as required by law, and it shall make all required tax deductions and/or tax withholdings, if any.

4.2     Each settlement payment set forth in this Agreement shall be allocated for tax reporting reasons as payment in settlement of claims for interest, repayment of principal, any applicable penalties, or liquidated damages, and all other non-wage recovery, which shall be reported to all applicable tax authorities as required by law on a Form 1099.

4.3     Other than the reporting set forth above, Participating Settlement Class Members shall be solely responsible for the reporting and payment of any federal, state and/or local income or other tax, if any, on the payments made pursuant to this Settlement Agreement and/or the FROP. Defendants make no representations, and it is understood and agreed that Defendants have made no representations, as to the taxability of any portions of the settlement payments to any Participating Settlement Class Members, any FROP proceeds, the payment of any costs or award of attorneys' fees, or any payments to the Settlement Class Representatives.  The Notice will advise Settlement Class Members to seek their own tax advice prior to acting in response to that Notice, and the Settlement Class Representatives and Plaintiffs' Counsel agree that the timelines set forth in this Agreement provide Settlement Class Members with an adequate opportunity to seek tax advice prior to acting in response to the Notice.

5.     <u>Administration Of The Settlement By the Settlement Administrator</u>.

5.1     The Parties have agreed upon Garden City Group, Inc. ("the Settlement Administrator") to perform the duties of a settlement administrator, including for the purpose of issuing Consent Forms, responding to inquiries by Settlement Class Members and filing all applicable papers with the Court.

5.2     Defendants shall provide the Settlement Administrator with the necessary records to perform its duties, including but not limited to a document showing the amount each Settlement Class Representative will receive and provide the last known address of each Settlement Class Member.

5.3     In the event that the Settlement Class Representatives or Plaintiffs' Counsel take the position that the Settlement Administrator is not acting in accordance with the terms of this Settlement Agreement, Plaintiffs' Counsel shall meet and confer with counsel for Defendants prior to raising any such issue with the Settlement Administrator or the Court.  If the matter cannot be resolved between counsel for the Parties, all disputes relating to the Settlement Administrator's actions shall be referred to the Court, if necessary, which will have continuing jurisdiction over the terms and conditions of this Settlement Agreement, until all payments and obligations contemplated by the Settlement Agreement have been fully carried out.

5.4     In the event that the Settlement Administrator is contacted by any Settlement Class Member regarding the Settlement Agreement, the Settlement Administrator shall be authorized to disclose to such Settlement Class Member the consideration that he or she may be entitled to receive pursuant to this Settlement Agreement.

6.      Attorneys' Fees And Expenses.

6.1     Plaintiffs' Counsel shall be entitled, subject to Court approval, to apply to the Court for an award of attorneys' fees and costs, not to exceed $394,500.00 Maximum Fee and Costs Award"), as reasonable attorneys' fees and out-of-pocket costs and expenses directly related to the Lawsuit (which includes all such fees and costs incurred to date, as well as all such fees and costs expected to be incurred in documenting the Settlement, securing Court approval of the Settlement, implementing and monitoring the Settlement, and obtaining final dismissal of the

Action).  This amount of fees and costs constitutes a compromise of the actual fees and costs incurred by Plaintiffs' Counsel.  Defendants agree to pay the amount approved by the Court up to $394,000.00.

6.2     The Maximum Fee and Costs Award amount set forth in this Section 6 of the Agreement shall constitute full satisfaction of any claim for attorneys' fees or costs.  The Settlement Class Representatives and Plaintiffs' Counsel, on behalf of themselves and all Settlement Class Members, agree that they shall not seek, nor be entitled to, any additional attorneys' fees or costs under any theory from any source.

6.3     The Settlement Class Representatives and Plaintiffs' Counsel agree that they shall be responsible for justifying the amount of this cost and attorneys fees payment to the Court, and they agree to submit the necessary motion/application to justify this payment along with the joint motion for final approval of the Settlement Agreement.  Defendants agree not to oppose any submission regarding, or request for approval of, this payment of fees or costs provided the application and amount sought is consistent with this Settlement Agreement.

6.4     Plaintiffs' Counsel shall provide counsel for Defendants with their pertinent taxpayer identification numbers and W-9 forms within five (5) days after the Effective Date.  Other than any reporting of the attorneys' fees and costs payment as required by this Settlement Agreement or by law, which Defendants shall make, Plaintiffs' Counsel and the Settlement Class Representatives shall alone be responsible for the reporting and payment of any federal, state and/or local income or other form of tax on any fee or cost payment made pursuant to this Settlement Agreement.  Other than for the limited purpose of allowing the payment provided in this Section 6 to be made as part of a settlement, no party shall be deemed the prevailing party

for any other purposes of the Litigation or otherwise, including in any other litigation or proceeding.

7.    Notice And Opt-In Process.

7.1    Within thirty (30) days of the Court's Preliminary Approval of the Settlement Agreement, Defendants shall provide the Settlement Administrator with a copy of the Settlement Agreement, a database of the Settlement Class Members' last known address or addresses and a spreadsheet showing the amount each Settlement Class Representative will receive.  Defendants agree to provide this information in a reasonable format acceptable to the Settlement Administrator.

7.2    Within thirty (30) days of the Court's Preliminary Approval of the Settlement Agreement, the Settlement Administrator shall send to each Settlement Class Member, by first class mail, a Settlement Class Notice and a Consent Form in substantially the forms attached hereto as Exhibits B and C after approval by the Court, and a postage prepaid, pre-addressed return envelope.  The Notice of Settlement shall be mailed in an envelope which shall bear the legend "IMPORTANT LEGAL DOCUMENT - DO NOT DISCARD."  The Notice and its envelope or covering shall be marked to denote the return address of the Settlement Administrator.

7.3    No other materials besides the Notice (including exhibits and prepaid return envelopes) will be included in this mailing to Settlement Class Members who have Unit Franchise Agreements with Shuttle Associates on the Preliminary Approval Date.  For Settlement Class Members who do not have Unit Franchise Agreements with Shuttle Associates on the Preliminary Approval Date and who are not Settlement Class Representatives, in addition to the Notice, a check in the amount of $100.00 will be mailed, together with written notification in the

Notice that, should he or she cash the check, he or she shall: (a) be bound by the Settlement, this Settlement Agreement and the Final Approval Order; and (b) be deemed to have forever waived his or her right to opt out of the Settlement Class; and (c) be deemed a Participating Member of the Settlement Class.

7.4    The Notice shall be deemed received by the Settlement Class Member to whom it was sent three (3) days after mailing, subject to Paragraph 7.5.

7.5    In the event that any mailing of a Consent Form and Notice of Settlement by the Settlement Administrator to any Settlement Class Member is returned as undeliverable, the Settlement Administrator shall use reasonable diligence to obtain a current address, including but not limited to obtaining a social security number from Defendants (if available), and conducting a Lexis-Nexis search using all available information, including such social security numbers, and shall re-mail the Consent Form, Notice of Settlement and return envelope. The Settlement Administrator shall only be required to conduct one such re-mailing. The Notice will be deemed mailed and received three (3) days after it is re-mailed or by the Final Approval Date, whichever is earlier, and the new/forwarding address shall be deemed the updated address for that Settlement Class Member.

7.6    In order to be timely, a Consent Form must be returned to the Settlement Administrator within forty-five (45) days after the date it is mailed by the Settlement Administrator. No Consent Form will be honored if the envelope returning it to the Settlement Administrator is postmarked more than forty-five (45) days after the date mailed by the Settlement Administrator.

7.7    All original Consent Forms shall be sent directly to the Settlement Administrator at the address indicated on the Consent Form. The Settlement Administrator shall review the Consent Forms and submit to Counsel for the Parties, within fifteen (15) days of the Notice Response

Deadline, a list of those Settlement Class Members who timely signed and submitted Consent Forms. The Settlement Administrator shall keep a copy of all Consent Forms.

7.8     The Parties agree that all Settlement Class Members will be deemed to have filed their Consent Forms with the Court on the date the Settlement is finally approved by the Court, regardless of the actual date on which their Consent Form is returned to the Settlement Administrator.

7.9     No more than ten (10) days after the Notice Response Deadline, the Settlement Administrator shall provide counsel for the Parties and the Court with a proof of mailing with regard to the mailing of the Notice of Settlement, showing that the Notice was sent to the Last Known Address of all Settlement Class Members. At least five (5) days prior to the Fairness Hearing Plaintiffs' Counsel shall file the proof of mailing of the Notice with the Court.

7.10    All costs of mailing the Notice, including the cost of the envelope in which the Notice will be mailed, the cost of reproducing the Notice, and the cost of postage to send the Notice and for responses will be part of the Administrative Costs of this Settlement to be paid by Defendants.

8.      <u>Objecting to or Opting Out of the Settlement</u>

8.1     Settlement Class Members may elect to "opt out" of the Settlement and Settlement Class and thus exclude themselves from the Lawsuit and the Settlement Class. Settlement Class Members who wish to exercise this option must submit a <u>written statement</u> stating that they want to opt out of the Settlement. Such written request for exclusion must contain their name, address, telephone number, and start and end dates of association with Shuttle Associates (approximation using years of association is acceptable), and must be personally signed by them. It also must contain the following statement:

I, [NAME], was or am a franchisee of Shuttle Associates LLC between [DATES].

I hereby exercise my right to opt out of the Settlement, knowing that by doing so I

waive any and all rights I may have to participate in that Settlement and to be paid

any portion of the settlement proceeds that I would otherwise be eligible to

receive under that Settlement.

This written notice of request for exclusion must be submitted to the Settlement

Administrator at the following address:

> Garden City Group, Inc.
> 1985 Marcus Avenue
> Lake Success, NY 11042

An opt-out notice must be postmarked no later than the Notice Response Deadline.  The

postmark date of the mailing envelope shall be the exclusive means to determine whether a

request for exclusion (opt out) has been timely submitted.

If a letter indicating a Settlement Class Member's intent to opt out is not timely received

by the Settlement Administrator from a Settlement Class Member on or before the Notice

Response Deadline, that Settlement Class Member shall: (a) be bound by the Settlement, this

Settlement Agreement and the Final Approval Order; and (b) be deemed to have forever waived

his or her right to opt out of the Settlement Class; and (c) be deemed a Member of the Settlement

Class; and (d) not receive any payment under this Settlement.  If a Settlement Class Member

submits both a letter to opt-out of the Action and the Settlement and also submits a Consent

Form, the Settlement Administrator will contact that Settlement Class Member to determine

which of the options they wish to pursue.  If the Settlement Class Member does not withdraw the

Consent Form they will be deemed to have chosen to participate in the Action and the Settlement

and will receive any applicable settlement payment or consideration.

8.2     Settlement Class Members may also object to the Settlement and this Settlement Agreement by submitting written objections to the Court, and sending copies to the Settlement Administrator, Plaintiffs' Counsel and Counsel for Defendants, no later than the Notice Response Deadline.  The Notice shall advise Settlement Class Members of this option. Settlement Class Members may choose to obtain their own attorney(s) to assist them in making objections.  Settlement Class Members who choose this option will be responsible for any attorneys' fees or costs incurred as a result of their election.

9.      Payments.

9.1     Defendants, themselves or through the Settlement Administrator, shall make all payments due to the Settlement Class Representatives and Plaintiffs' Counsel within thirty (30) days following the Effective Date.

9.2     Simultaneously and together with the Notice, as set forth in Paragraph 7 of this Settlement Agreement, Defendants, themselves or through the Settlement Administrator, shall mail a $100.00 check to each Settlement Class Member who does not have a Unit Franchise Agreement with Shuttle Associates on the Preliminary Approval Date and who is not a Settlement Class Representative.

10.     Release Of Claims.

10.1    Upon the Final Approval of this Settlement, all Settlement Class Members who have not opted out of this Action and the Settlement through the processes set forth in the Agreement, and for purposes of claims under the FLSA all Settlement Class Members who submit a Consent Form and/or who negotiate a check to accept a payment as part of this Settlement, shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and

forever released, dismissed with prejudice, relinquished and discharged all Released Federal Law

Claims against Defendants and all the Releasees.

10.2     Upon the Final Approval of this Settlement, all Settlement Class Members who have not

opted out of this Action and the Settlement through the processes set forth in the Agreement shall

be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and

forever released, dismissed with prejudice, relinquished and discharged all Released State Law

Claims against Defendants and all the Releasees.

10.3     In addition to being bound by the release of their Released Claims through the operation

of this Section 10, the Settlement Class Representatives will also execute a separate General

Release, in the form attached hereto as Exhibit A, releasing any and all claims of any kind which

they may have against the Releasees.  The consideration paid in this Settlement Agreement is

being given in part as consideration for this additional general release, and the Settlement Class

Representatives acknowledge and agree that no payment or consideration under this Settlement

Agreement needs to be made to them unless and until they execute the additional release and it

becomes effective.

10.4     Any Settlement Class Member who timely opts out of this Action and the Settlement will

not receive the settlement consideration set forth in this Settlement Agreement and will not be

bound by the terms of this Settlement and by any order regarding settlement and judgment in this

case.  Any Settlement Class Member who fails to opt out of this Action and Settlement will not

receive the settlement consideration set forth in this Settlement Agreement and will be bound by

the terms of this Settlement and any order regarding settlement and judgment in this case as to all

Released State Law Claims and all Released Federal Law Claims other than any claims under the

FLSA.  Any Settlement Class Member who fails to opt out of this Action and Settlement and

who also does not timely submit a Consent Form or negotiate a settlement check (i.e., who in other words does nothing in response to the Notice) will not receive a settlement payment and will <u>not</u> be bound by the terms of this Settlement and any order regarding setttlement and judgment in this case as to any FLSA claims.

11.    <u>Duties Of The Parties Prior To Preliminary Court Approval</u>.

11.1    Plaintiffs shall, within ten (10) business days after executing the Settlement Agreement: (a) submit this Settlement Agreement to the Court together with a Motion for Preliminary Approval and determination by the Court as to its fairness, adequacy, and reasonableness; and (b) apply to the Court for the entry of an order containing the following points and substantially in the form attached hereto as Exhibit I:

     a.    Scheduling a hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable and adequate as to the Settlement Class;

     b.    Certifying, only for the purpose of settlement under the terms of this Settlement Agreement, the FLSA claims as a collective class action pursuant to Section 216(b) of the FLSA;

     c.    Certifying, only for the purpose of settlement under the terms of this Settlement Agreement, the State Law and ERISA claims as class actions pursuant to Fed. R. Civ. P. 23(a);

     d.    Approving as to form and content the proposed Notice of Settlement;

     e.    Approving as to form and content the proposed Consent Form;

     f.    Directing the mailing of the Notice of Settlement and Consent Form (and $100.00 check and associated written notification to Settlement Class Members who do not have Unit Franchise Agreements with Shuttle Associates on the Preliminary Approval Date) by first class mail to the Settlement Class Members; and

g.      Preliminarily approving the settlement, and adjudging the terms thereof to be fair, reasonable and adequate.

11.2    In the absence of a written agreement of the Parties, failure of the Court to enter the attached Preliminary Approval Order in its entirety or in a substantially similar form will be grounds for the Settlement Class Representatives or Defendants to choose to terminate the Settlement and the terms of this Settlement Agreement.

11.3    If the Court enters the Preliminary Approval Order, then at the resulting Fairness Hearing the Settlement Class Representatives and Defendants, through their counsel of record, shall address any written objections from Settlement Class Members or any concerns from Settlement Class Members who attend the hearing as well as any concerns of the Court, if any.  The Parties shall and hereby do, unless provided otherwise in this Settlement Agreement, stipulate to final approval of this Settlement Agreement and entry of the Final Approval Order by the Court.

12.     Duties Of The Parties Prior To A Final Court Approval.

12.1    Following Preliminary Approval by the Court of the Settlement provided for in this Settlement Agreement, and no later than 15 days before the Fairness Hearing Plaintiffs' Counsel will submit an agreed upon proposed Final Order and Judgment in substantially the form attached hereto as Exhibit J, which shall provide for:

a.      Approving the Settlement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions;

b.      Dismissing this Action on the merits and with prejudice;

c.      Upon satisfaction of all payments and obligations hereunder, permanently barring all Settlement Class Members who have not opted out of this Action from prosecuting against

Defendants or any Releasee, any individual or class claims relating to the Released Federal Law

Claims and Released State Law Claims as set forth in this Agreement;

        d.      Approving the Case Contribution Awards to the Settlement Class

Representatives; and

        e.      Approving the attorneys' fees and costs of Plaintiffs' Counsel up to the Maximum

Fee and Costs Award.

13.    <u>Voiding The Agreement</u>.

13.1    If the Court rejects this Settlement Agreement, fails to enter the Final Approval Order in

substantially the form attached hereto as Exhibit J, or fails to enter the Final Approval Order,

unless the Parties agree in writing, this Settlement Agreement shall be void *ab initio*, and

Defendants shall have no obligations to make any payments under the Settlement.

13.2    A decision of the Court declining to approve any material condition of this Settlement

Agreement which effects a fundamental change of the Parties' Settlement shall render the entire

Settlement voidable and unenforceable as to all Parties herein at the option of either Party.  Each

Party may exercise its option to void this Settlement by giving notice, in writing, to the other and

to the Court within fifteen (15) days of the Court's disapproval of any material condition, but in

no event at any time after the Effective Date.

13.3    Unless the Parties agree in writing otherwise, in the event that the Settlement Agreement

is not approved by the Court or the settlement set forth in the Settlement Agreement is

terminated, cancelled, declared void or fails to become effective in accordance with its terms, or

if there is no Final Approval Order, the Parties shall resume the Litigation at that time as if no

Settlement Agreement had been entered.  In such event, the terms and provisions of the

Settlement Agreement, and the approval of any settlement class or collective action for purposes

of implementing this Settlement, shall have no further force and effect with respect to the Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement (including without limitation any order certifying the case or any part of the case as a class or collective action for settlement purposes) shall be treated as vacated, *nunc pro tunc.*

14.     <u>Parties' Authority</u>.  The signatories below hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions of this Agreement.

15.     <u>Mutual Full Cooperation</u>.

15.1    The Parties agree to fully cooperate with each other and to take all steps necessary and appropriate to effectuate the terms of this Settlement Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Settlement Agreement.  The Parties to this Settlement Agreement shall use their reasonable efforts, including all efforts contemplated by this Settlement Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Settlement Agreement and the terms set forth herein.  As soon as practicable after execution of this Settlement Agreement,  Plaintiffs' Counsel shall, with the assistance and cooperation of Defendants and their counsel, take all necessary steps to secure the Court's approval of this Settlement Agreement.

15.2    Defendants, Defendants' Counsel, Plaintiffs and Plaintiffs' Counsel agree that they will not attempt to discourage Settlement Class Members from participating in this settlement, including, but not limited to, opting in to the settlement of their FLSA claims.  Attorneys for both

parties agree that any inquiries from Settlement Class Members shall be referred to the

Settlement Administrator.

16.     Confidentiality And Non-Publication Of Settlement.

16.1    The Parties agree that, other than filing this Settlement Agreement with the Court,

discussions between Settlement Class Members, or as otherwise provided herein or required by

law, they shall keep strictly confidential the terms of this Settlement Agreement, will not

disclose, make known, discuss or relay orally, or in writing, electronically or otherwise, the

existence or terms of this Settlement Agreement, any information concerning this Settlement

Agreement, any of the discussions leading up to this Settlement Agreement, and Defendants'

defenses to such claims.  If asked about the case, the Parties and/or their counsel will merely say

that the case has been amicably resolved, and refer any interested parties to the public filings.

Defendants, the Settlement Class Representatives, Plaintiffs' Counsel,  and Defendants' Counsel

further agree that they will not publicize or disclose the terms of this Settlement Agreement, the

negotiations with respect thereto, or any other matters relating to the above-captioned Litigation,

either directly or indirectly, that is, through agents, attorneys, or accountants, or any other person

or entity, either in specific or as to general content, to the media, the public generally, or any

individual or entity.  Notwithstanding the foregoing, nothing in this Settlement Agreement

restricts, or is intended to restrict, communications between Plaintiffs' Counsel and individual

Settlement Class Members regarding the Action or the terms of this Settlement Agreement in

response to questions received by Plaintiffs' Counsel from such Settlement Class Members.

Moreover, this paragraph does not prohibit the Settlement Class Representatives from disclosing

information concerning this Settlement Agreement to members of their immediate family or life

partners, and Plaintiffs' Counsel from disclosing information concerning this Settlement

Agreement to their employees and agents to the extent necessary to effectuate the terms of the

Settlement Agreement.  This paragraph does not prohibit Defendants and/or Defendants'

Counsel from disclosing information concerning this Settlement Agreement to its employees and

agents to the extent necessary to effectuate the terms of this Settlement Agreement or who

otherwise have a business need to know the terms.  Defendants, the Settlement Class

Representatives, and Plaintiffs' Counsel may also disclose information concerning this

Settlement Agreement to their respective counsel, tax advisors, insurance companies and

external auditors who have first agreed to keep said information confidential and to not disclose

it to others.  The foregoing shall not prohibit or restrict such disclosure as is required by law or as

may be necessary for the prosecution of claims relating to the performance or enforcement of

this Settlement Agreement, or prohibit or restrict Defendants, the Settlement Class

Representatives or Plaintiffs' Counsel from responding to any inquiry about this settlement or its

underlying facts and circumstances by any governmental agency, or any regulatory or self-

regulatory agency or organization. To the extent permitted by law, with respect to any such

disclosure pursuant to the foregoing sentence, Defendants, the Settlement Class Representatives

and Plaintiffs' Counsel shall provide the other Party with as much notice as possible of any

request to make any above-described disclosure, and will use best efforts to ensure that if such

disclosure occurs it will occur in a manner designed to maintain the confidentiality of this

Settlement Agreement to the fullest extent possible.

16.2    The Parties and their respective counsel agree that they will not issue any press release,

and will not hold or participate in any press conference, communication or contact with the

media regarding this Settlement or any other matter related to this Action and will not post

details of the Settlement on their respective web pages, blogs, Facebook, Twitter and/or other

social media accounts/sites and/or otherwise on the internet.  If the Parties and/or their counsel are contacted by the media, they will limit their response to a statement that the case has been amicably resolved, and refer the inquiring party to the public filings.

16.3    With respect to all of the documents produced by Defendants in this litigation, Plaintiffs' Counsel acknowledge that they continue to be bound by the Parties' agreement that these documents must be kept confidential and may only be used to prosecute or settle this Lawsuit.

17.    <u>Miscellaneous Provisions</u>.

17.1    No person shall have any claim against Plaintiffs' Counsel, the Settlement Administrator, Defendants' counsel or any of the Releasees based on the payments made or other actions taken substantially in accordance with the Settlement Agreement and the Settlement contained therein or any orders of the Court.

17.2    All of the exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

18.    <u>Binding on Assigns/No Prior Assignments</u>.

18.1    This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and permissible assigns, but this Settlement Agreement is not designed to and does not create any third-party beneficiaries.

18.2    The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber, to any person or entity, any portion of any liability, claim, demand, action, cause of action or right herein released and discharged except as set forth herein.

19.    <u>No Admission</u>.

19.1    Nothing contained herein, nor the consummation of this Settlement Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendants or any Releasee.  Each of the Parties hereto has entered into this Settlement Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.  The Parties agree that the amounts paid in settlement and the other terms of the Settlement were negotiated in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

19.2    Neither the Settlement Agreement nor the Settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Settlement Agreement or the Settlement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of Defendants or the Releasees, or any of them; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of Defendants or the Releasees, or any of them, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (c) is or may be deemed to be, nor may be used as, an admission of, or evidence of, the validity of the certifiability of any settlement class or collective action for any purpose other than effectuating a settlement in this action.  Neither the Settlement Agreement nor the Settlement will be referred to by the Settlement Class Representatives or by Plaintiffs' Counsel or by any Settlement Class Member in any other pleading or proceeding in any court, administrative agency or other tribunal, except in an action or proceeding to approve, interpret or enforce this Settlement Agreement.

20.    <u>Actions To Enforce This Settlement</u>.

20.1     In the event that one or more of the Parties to this Settlement Agreement institutes any legal action, arbitration, or other proceeding against any other Party or Parties to enforce the provisions of this Settlement Agreement or to declare rights and/or obligations under this Agreement, the successful Party or Parties shall be entitled to apply to the Court or arbitrator for an award to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions.

20.2     The Court shall retain jurisdiction with respect to the implementation, administration, and enforcement of the terms of this Settlement Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Settlement Agreement.

20.3     This Settlement Agreement shall be considered to have been negotiated, executed and delivered, and to have been wholly performed, in the State of New York, and the rights and obligations of the Parties to the Settlement Agreement shall be construed and enforced in accordance with, and be governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice of law principles.

21.     Notices.

Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third (3) business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To the Plaintiff Class:

Peter W. Overs, Jr.
Harwood Feffer LLP
488 Madison Ave., 8th Floor
New York, NY 10022

Phone: (212) 935-7400
Fax: (212) 753-3630
Email: povers@hfesq.com

Salvatore G. Gangemi
Gangemi Law Firm, P.C.
82 Wall Street, Suite 300
New York, NY 10005
Phone: (212) 425-0630, Ext. 112
Fax: (212) 425-0635
Email: sgangemi@gangemilaw.com

To the Defendants:

Christopher A. Parlo
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0600
Phone: (212) 309-6000
Fax: (212) 309-6001
Email: cparlo@morganlewis.com

22.    <u>Construction</u>.

The parties hereto agree that the terms and conditions of this Settlement Agreement are contractual and are the result of lengthy, intensive arms-length negotiations between the Parties and that this Settlement Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his, her or its counsel participated in the drafting of this Agreement.  No Party shall be deemed the sole drafter of this Agreement.

23.    <u>Captions and Interpretations</u>.

Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof.  Each term of this Settlement Agreement is contractual and not merely a recital.

24.    <u>Modification</u>.

This Settlement Agreement may not be changed, altered, or modified, except in writing and signed by all of the Parties hereto, and approved by the Court.  This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by all of the Parties.

25.     Integration Clause.

This Settlement Agreement contains the entire agreement between the Parties relating to the Settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein.  No rights hereunder may be waived except in writing.

26.     Class Counsel Signatories.

It is agreed that it is impossible or impractical to have each individual who files a Consent Form and opts in to the settlement execute this Settlement Agreement.  The Notice of Settlement, Exhibit B hereto, will advise all Settlement Class Members of the binding nature of the release and such shall have the same force and effect as if this Settlement Agreement were executed by each individual who files a Consent Form and opts in to the Settlement.

27.     Counterparts.

While the Parties will make a good faith effort to execute and have each Party have a fully executed original copy of this Settlement Agreement, this Settlement Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.  Signatures in facsimiles will have the same effect as originals.

28.     <u>Waiver of Right of Appeal</u>.

        The Parties agree that, upon Final Approval of the Settlement Agreement by the Court,

they shall waive any and all appeals which they may have or may have had with regard to this

Action.

PLAINTIFFS, individually and on behalf of other similarly situated individuals

_____        Date: _____
Isaac Reid

_____        Date: _____
Robert Green

_____        Date: _____
Robert B. Walker

_____        Date: _____
Orville Harris

_____        Date: _____
Gregory Morgan

_____        Date: _____
Trevor Francis

_____        Date: _____
Everton Welch

_____        Date: _____
Frank Taylor

_____        Date: _____
Johann Ramirez

HARWOOD FEFFER LLP

By: _____

      Peter W. Overs, Jr.
      488 Madison Ave., 8th Floor
      New York, NY 10022
      Phone: (212) 935-7400
      Fax: (212) 753-3630
      Email: povers@hfesq.com

GANGEMI LAW FIRM, P.C.

By: _____

      Salvatore G. Gangemi
      82 Wall Street, Suite 300
      New York, NY 10005
      Phone: (212) 425-0630, Ext. 112
      Fax: (212) 425-0635
      Email: sgangemi@gangemilaw.com

*Attorneys for Plaintiffs*

MORGAN, LEWIS & BOCKIUS, LLP

By: _____

      Christopher A. Parlo
      101 Park Avenue
      New York, NY 10178-0600
      Phone: (212) 309-6000
      Fax: (212) 309-6001
      Email: cparlo@morganlewis.com

*Attorneys for Defendants*

HARWOOD FEFFER LLP

By: _____

      Peter W. Overs, Jr.
      488 Madison Ave., 8th Floor
      New York, NY 10022
      Phone: (212) 935-7400
      Fax: (212) 753-3630
      Email: povers@hfesq.com

GANGEMI LAW FIRM, P.C.

By: _____

      Salvatore G. Gangemi
      82 Wall Street, Suite 300
      New York, NY 10005
      Phone: (212) 425-0630, Ext. 112
      Fax: (212) 425-0635
      Email: sgangemi@gangemilaw.com

*Attorneys for Plaintiffs*

MORGAN, LEWIS & BOCKIUS, LLP

By: _____

      Christopher A. Parlo
      101 Park Avenue
      New York, NY 10178-0600
      Phone: (212) 309-6000
      Fax: (212) 309-6001
      Email: cparlo@morganlewis.com

*Attorneys for Defendants*

PLAINTIFFS, individually and on behalf of other similarly situated individuals

_Isaac Reid_                          Date: _12 - 2 - 11_
Isaac Reid

_____               Date: _____
Robert Green

_Robert B. Walker_                    Date: _12 - 02 - 2011_
Robert B. Walker

_____               Date: _____
Ibrahima Bah

_____               Date: _____
Mamadou Wague

_____               Date: _____
Marie W. Dasney

_Orville Harris_                      Date: _12 - 08 - 11_
Orville Harris

_____               Date: _____
Gregory Morgan

_____               Date: _____
Trevor Francis

_____               Date: _____
Everton Welch

_____               Date: _____
Frank Taylor

_____               Date: _____
Johann Ramirez

PETER EVERS

FAX  212 753 3630

The Parties agree that, upon Final Approval of the Settlement Agreement by the Court,

they shall waive any and all appeals which they may have or may have had with regard to this

Action.

PLAINTIFFS, individually and on behalf of other similarly situated individuals

_____          Date: _____
Isaac Reid

_____          Date: _____
Clement Green

_____          Date: _____
Robert B. Walker

_____          Date: _____
Lionel Singh

_____          Date: _____
Ibrahima Bah

_____          Date: _____
Mamadou Wague

_____          Date: _____
Marie W. Dasney

_____          Date: _____
Orville Harris

*Gregory Morgan*          Date: *12·08·11*
Gregory Morgan

_____          Date: _____
Trevor Francis

_____          Date: _____
Everton Welch

_____          Date: _____
Frank Taylor

_____          Date: _____

DB2/ 22717697.5

-43-

PLAINTIFFS, individually and on behalf of other similarly situated individuals

Isaac Reid _____        Date: _____

Robert Green _____        Date: _____

Robert B. Walker _____        Date: _____

Lionel Singh _____        Date: _____

Ibrahima Bah _____        Date: _____

Mamadou Wague _____        Date: _____

Marie W. Dasney _____        Date: _____

Orville Harris _____        Date: _____

Gregory Morgan _____        Date: _____

Trevor Francis _____        Date: _____

Everton Welch _____        Date: _____

Frank Taylor _____        Date: _____

Johann Ramirez _____        Date: _____

DB2/ 22822347.3

The Parties agree that, upon Final Approval of the Settlement Agreement by the Court, they shall waive any and all appeals which they may have or may have had with regard to this Action.

PLAINTIFFS, individually and on behalf of other similarly situated individuals

_____     Date: _____
Isaac Reid

_Clement Green_                Date: 12/5/2011
Clement Green

_____     Date: _____
Robert B. Walker

_____     Date: _____
Lionel Singh

_____     Date: _____
Ibrahima Bah

_____     Date: _____
Mamadou Wague

_____     Date: _____
Marie W. Dasney

_____     Date: _____
Orville Harris

_____     Date: _____
Gregory Morgan

_____     Date: _____
Trevor Francis

_____     Date: _____
Everton Welch

_____     Date: _____
Frank Taylor

_____     Date: _____

DB2/ 22717697.5

-43-

The Parties agree that, upon Final Approval of the Settlement Agreement by the Court, they shall waive any and all appeals which they may have or may have had with regard to this Action.

PLAINTIFFS, individually and on behalf of other similarly situated individuals

_____          Date: _____
Isaac Reid

_____          Date: _____
Clement Green

_____          Date: _____
Robert B. Walker

_____          Date: _____
Lionel Singh

_____          Date: _____
Ibrahima Bah

_____          Date: _____
Mamadou Wague

_____          Date: _____
Marie W. Dasney

_____          Date: _____
Orville Harris

_____          Date: _____
Gregory Morgan

_____          Date: _____
Trevor Francis

_____          Date: _____
Everton Welch

_____          Date: 12-02-2011
Frank Taylor

_____          Date: _____

DB2/ 22717697.5

-43-

The Parties agree that, upon Final Approval of the Settlement Agreement by the Court, they shall waive any and all appeals which they may have or may have had with regard to this Action.

PLAINTIFFS, individually and on behalf of other similarly situated individuals

_____        Date: _____
Isaac Reid

_____        Date: _____
Clement Green

_____        Date: _____
Robert B. Walker

_____        Date: _____
Lionel Singh

_____        Date: _____
Ibrahima Bah

_____        Date: _____
Mamadou Wague

_____        Date: _____
Marie W. Dasney

_____        Date: _____
Orville Harris

_____        Date: _____
Gregory Morgan

_____        Date: _____
Trevor Francis

_____        Date: _____
Everton Welch

_____        Date: _____
Frank Taylor

Johann M. Ramirez                       Date: 12/5/11

DB2/ 22717697.5

-43-

Johann Ramirez

HARWOOD FEFFER LLP

By: _____
       Peter W. Overs, Jr.
       488 Madison Ave., 8th Floor
       New York, NY 10022
       Phone: (212) 935-7400
       Fax: (212) 753-3630
       Email: povers@hfesq.com

GANGEMI LAW FIRM, P.C.

By: _____
       Salvatore G. Gangemi
       82 Wall Street, Suite 300
       New York, NY 10005
       Phone: (212) 425-0630, Ext. 112
       Fax: (212) 425-0635
       Email: sgangemi@gangemilaw.com

*Attorneys for Plaintiffs*

MORGAN, LEWIS & BOCKIUS, LLP

By: _____
       Christopher A. Parlo
       101 Park Avenue
       New York, NY 10178-0600
       Phone: (212) 309-6000
       Fax: (212) 309-6001
       Email: cparlo@morganlewis.com

*Attorneys for Defendants*