UNITED STATES DISTRICT COURT　　　　ELECTRONIC PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

ISAAC REID, CLEMENT GREEN, ROBERT B. WALKER, LIONEL SINGH, KEITH CLARKE, IBRAHIMA BAH, MAMADOU WAGUE, MARIE W. DASNEY, ORVILLE HARRIS, GREGORY MORGAN, TREVOR FRANCIS, EVERTON WELSH, FRANK TAYLOR, SEYMOUR LEWIS, AND JOHANN RAMIREZ on behalf of themselves and all others similarly situated,

       Plaintiffs,

   - versus -

SUPERSHUTTLE INTERNATIONAL, INC., SUPERSHUTTLE FRANCHISE CORPORATION, VEOLIA TRANSPORTATION SERVICES, INC., d.b.a. SUPERSHUTTLE, SHUTTLE ASSOCIATES, LLC.,

       Defendants.

MEMORANDUM

08-CV-4854 (JG)(VVP)

A P P E A R A N C E S :

  HARWOOD FEFFER LLP
    488 Madison Avenue
    8th Floor
    New York, New York 10022
  By: Robert I. Harwood
    Peter W. Overs, Jr.

    *- and -*

  GANGEMI LAW FIRM, P.C.
    82 Wall Street
    Suite 300
    New York, New York 10005
  By: Salvatore G. Gangemi

   *Attorneys for the Plaintiffs*

MORGAN, LEWIS & BOCKIUS LLP
    101 Park Avenue
    New York, New York 10178
By:    Christopher A. Parlo
    Melissa C. Rodriguez
    Leni D. Battaglia

*Attorneys for the Defendants*

JOHN GLEESON, United States District Judge:

The Plaintiffs have moved for final approval of a proposed settlement of this class action, as well as certification of a settlement class, appointment of class representatives and counsel, approval of case contribution awards and an award of expenses and attorney's fees. Having reviewed the written submissions and conducted a fairness hearing on June 5, 2012, the Court has determined that the settlement should be approved. In separate orders, filed simultaneously with this memorandum, the Plaintiffs' motions are granted.

## BACKGROUND

The Plaintiffs are current and former franchisees of SuperShuttle International, Inc. ("SuperShuttle"), "the nation's leading shared-ride airport taxi shuttle." Am. Compl. ¶ 28, ECF No. 11 (internal quotation marks omitted). They commenced this action on December 2, 2008, principally asserting various claims under the New York Labor Law (the "NYLL") and the Fair Labor Standards Act (the "FLSA") concerning wages and unpaid overtime. The case was brought on behalf of a class of all current and former franchisees who worked for SuperShuttle in New York from December 2, 2002, until the entry of judgment. The FLSA claims were brought as an opt-in collective action.

After several years of proceedings, which included this Court granting a motion to compel some of the Plaintiffs to assert their claims in arbitration, the parties reached a settlement in 2011. The settlement consists primarily of (a) monetary relief of $100 for class members who

do not currently have a SuperShuttle franchise; and (b) a new SuperShuttle program called the Franchise Resale Opportunity Program ("FROP"), which would allow current franchisees to sell a new ten-year franchise through financing provided by SuperShuttle. In addition, the settlement provides current franchisees with "procedural safeguards." Specifically, certain SuperShuttle policies will be made clearer; and any decisions to suspend or terminate a franchisee will be made by higher level mangers after the franchisee has had an opportunity to tell his or her side of the story.

The Court held a status conference on January 20, 2012, in connection with the Plaintiffs' motion for preliminary approval of the settlement. During the status conference, I raised concerns regarding the adequacy of the settlement and the apparent lack of a nexus between the benefits provided by the FROP and the claims asserted in this lawsuit. After hearing from the parties and receiving additional materials, preliminary approval of the settlement was granted and a class was conditionally certified on February 8, 2012.

After notice was provided to the class, the Court received several letters from class members who had opted out of the class and urged the Court not to grant final approval of the settlement. Approximately 38% of the class has opted out. However, no objections have been filed. On May 29, 2012, the Plaintiffs moved for final approval of the settlement. At the fairness hearing on June 5, 2012, no one appeared to object to the settlement.

DISCUSSION

A.  *Approval of the Settlement*

Settlement of a class action requires court approval. *In re Visa Check/ MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 509 (E.D.N.Y. 2003) (citing Fed. R. Civ. P. 23(e)), *aff'd sub nom.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005). In

considering whether to approve a class action, a court should determine whether the proposed settlement is fair, adequate and reasonable. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). In making this determination, a court should be cognizant of "the general policy favoring settlement." *Visa Check/MasterMoney*, 297 F. Supp. 2d at 509; *see also In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998). It must not "rubber stamp the settlement," but it also must not "engage in the detailed and thorough investigation that it would undertake if it were actually trying the case." *Visa Check/MasterMoney*, 297 F. Supp. 2d at 509 (internal quotation marks and citation omitted).

A court should consider the fairness of the settlement both procedurally, by examining the negotiations that led to the settlement, and substantively, by examining the settlement's terms. *See McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009); *see also Visa Check/MasterMoney*, 297 F. Supp. 2d at 509. Where, as here, a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the negotiation enjoys a "presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173–74 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato*, 236 F.3d 78; *see also Wal-Mart Stores*, 396 F.3d at 116. In light of the efforts of experienced and able counsel on both sides over several years, I conclude that the settlement is procedurally fair.

In considering the substantive fairness of a settlement, a court should consider the following factors:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment,

4

> (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also McReynolds*, 588 F.3d at 804.

The expense and likely duration of this case favor settlement. Absent a settlement, this case would likely take substantial time and resources to resolve. There would be the completion of additional discovery, briefing and argument of motions for summary judgment and for class certification (and, with class certification, potential appeals) and eventually, perhaps, a lengthy trial followed by further appeals. Thus, the first factor weighs in favor of approving the settlement. *See Visa Check/MasterMoney*, 297 F. Supp. 2d at 510.

The second factor – the reaction of the class – is somewhat mixed. Although not a single class member has objected to the settlement, a substantial minority of class members – 38%, including some named plaintiffs – has opted out of the settlement.[1] However, even if all of the opt-outs are deemed to oppose the settlement, that degree of opposition does not bar approval of a settlement. "Preventing a settlement that a district court properly determines to be fair and reasonable solely because of majority opposition 'not only deprives other class members of the benefits of a manifestly fair settlement and subjects them to the uncertainties of litigation, but . . . [may] result[] in the eventual disappointment of the objecting class members as well.'" *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987) (quoting *TBK Partners, Ltd. v. Western*

---

[1] Some of the class members who have opted out filed letters with the Court objecting in general terms to the settlement. However, by opting out, these class members relinquished their standing to formally object to the settlement. *See In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 28–29 (D.C. Cir. 2000); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 753 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *see also* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:55, at 177–78 (4th ed. 2002).

*Union Corp.*, 675 F.2d 456, 462–63 (2d Cir. 1982)) (alterations in original). Especially in light of the lack of formal objections, the 38% opt-out rate does not bar approval of the settlement. However, it weighs somewhat against approval.

The third factor favors approval of the settlement. Although it is not yet complete, a substantial amount of discovery has already taken place. Moreover, there has been substantive motion practice as well as mediation.

The fourth, fifth and sixth factors, which relate to the risks of obtaining relief and maintaining a class, substantially weigh in favor of approval. The Plaintiffs face significant risks in establishing liability. They would have to prove, *inter alia*, that they were SuperShuttle employees rather than independent contractors. As they note, similar claims brought by drivers have failed on the merits or at the class certification stage. *See, e.g.*, *In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*, 758 F. Supp. 2d 638, 661–733 (N.D. Ind. 2010) (granting summary judgment in defendants' favor in multidistrict litigation brought by drivers of package delivery company); *Edwards v. Publishers Circulation Fulfillment, Inc.*, 268 F.R.D. 181, 184, 188–89 (S.D.N.Y. 2010) (denying class certification in suit brought by newspaper delivery drivers). And SuperShuttle drivers have failed to prove their status as employees in some arbitration proceedings. *See, e.g.*, *SuperShuttle DFW, Inc. v. Amalgamated Transit Union Local 1338*, No. 16-RC-10963 (N.L.R.B. Aug. 16, 2010). Moreover, the fact that many SuperShuttle drivers have agreed to arbitrate their claims would complicate the Plaintiffs' efforts to certify a class.

The Plaintiffs faced other significant obstacles to any recovery. For example, the Defendants intended to argue that SuperShuttle drivers are not entitled to overtime compensation under the FLSA or the NYLL because of the "Motor Carrier Exemption," 29 U.S.C. § 213(b)(1);

*see also* 12 N.Y.C.R.R. § 142-2.2. The Defendants also intended to argue that most of the Plaintiffs' would be unable to recover for any violation of the minimum wage laws because their gross income exceeded the applicable minimum wage.

In short, the Plaintiffs face a real and substantial risk of obtaining nothing if this case were to proceed. This weighs heavily in favor of a settlement, albeit a modest one.

The final two factors require considering the range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation. Compared to the best possible recovery, the settlement is modest, and this weighs against approval. But the settlement does provide real benefits to class members. The fact that further litigation of this case may result in the class obtaining nothing weighs heavily in favor of approval.

Having reviewed all of the relevant factors, I conclude that the settlement is substantively fair and adequate and should be approved.

B. *Certification of a Settlement Class*

Before certifying a class for settlement purposes, a court must determine whether the requirements for class certification have been met. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). Rule 23(a) of the Federal Rules of Civil Procedure sets forth the following requirements for class certification:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

7

Fed. R. Civ. P. 23(a). These requirements are generally referred to as numerosity, commonality, typicality and adequacy.

In addition, class certification requires that the class action fall into one of the categories specified in Rule 23(b). *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007). Here, the Plaintiffs seek class certification on the grounds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* 23(b)(3).

I find that each of the Rule 23(a) requirements is satisfied. The potential class consists of 192 former franchisees and 124 current franchisees. Even excluding the opt-outs, there are close to 200 class members, which is well above the 40-member point at which "[n]umerosity is generally presumed." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

The commonality requirement is satisfied because there are several questions of law and fact that are common to the class members. These include whether they were SuperShuttle employees or independent contractors and whether SuperShuttle's compensation policies violated the FLSA or the NYLL. The typicality requirement is satisfied because the named Plaintiffs' claims are for the same type of injury under the same legal theory as the rest of the class. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011). Finally, the proposed class representatives will provide adequate representation because they "have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *In re Literary Works in Elec. Databases*

8

*Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (internal quotation marks and citation omitted).[2]

In addition, I find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In particular, whether SuperShuttle franchisees are independent contractors or employees is the predominant issue in this case and is common to all class members. This issue is subject to class-wide proof, involving standardized documents common to all franchisees. A class action is superior to other methods for adjudicating this controversy, given the costs and other burdens that would be involved in individual litigation.

Accordingly, certification of a class for settlement purposes is warranted.

C.  *Approval of Attorney's Fees*

The lodestar method – in which a reasonable hourly rate is multiplied by the number of hours required to litigate the case – is an accepted methodology for calculating an appropriate award of attorney's fees. *See McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). In determining the appropriate fee amount, the following factors should be considered: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163(S.D.N.Y. 1989)) (internal quotation marks omitted) (alteration in original).

---

[2] The proposed class representatives are one current franchisee and one former franchisee, which ensures that both these types of class members will be represented adequately.

Here, Plaintiffs' counsel has submitted documentation that they spent more than 1,787 hours on this case, resulting in total fees of $794,550.13.[3] In addition, they have incurred unreimbursed expenses of $32,204.80. They seek an award of $394,500, which is 47.7% of the total lodestar amount. Having considered the relevant factors, I conclude this award is fair and reasonable.

CONCLUSION

For the reasons stated above, the Plaintiffs' motions for final approval of the settlement, certification of a settlement class, appointment of class representatives and counsel, approval of case contribution awards and an award of expenses and attorney's fees will be granted in separate orders.

So ordered.

John Gleeson, U.S.D.J.

Dated: August 10, 2012
      Brooklyn, New York

---

[3] The hourly rates range from $250 for a paralegal to $700 for a partner. *See* Overs Decl., Ex. A, ECF No. 128.